### City of Jeannette v. Shope (No. 2)

*George Conti* and *Andrew Romito,* for plaintiffs.

*H. R. Belden, Jr.,* for defendants.

SCULCO, J., May 6, 1974.—

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECREE NISI

This case comes before the court on a complaint in mandamus brought by plaintiffs, City of Jeannette, a municipal corporation, and the City of Arnold, a municipal corporation, against defendants, Dorothy K. Shope, Robert G. Shirey and James R. Kelley, County Commissioners of Westmoreland County, Pa.

Defendants filed preliminary objections to the complaint in mandamus. Said preliminary objections were dismissed by the court on November 16, 1973.

### HISTORY OF THE CASE

The testimony and evidence introduced at the hearing, upon the complaint in mandamus filed herein, established the following facts. In the year 1970, representatives of the respective plaintiffs met with the Commissioners of Westmoreland County to request financial assistance toward providing the local share in their Federally Assisted Code Enforcement Projects, each requesting the sum of $135,000. The board of commissioners, then comprised of James R. Kelley, Bernard F. Scherer and John J. LaCarte, agreed to pay the requested moneys in three equal annual installments of $45,000, commencing in the year 1971. Each of these commissioners testified that this was their "intent" and "resolve". Mr. LaCarte testified, inter alia, at page 40:

"Q. And we just had some discussion as to a definition of the word commitment. As an individual mem-

ber of the Board, was it your understanding that you were making a commitment for the total amount of the funds set forth there?

"A. Well, sir, when this request was asked of us, I clearly understood it that we were committing the county for the total dollars extended over a period of three years.

"Q. I see, and would that be your understanding then that the Board so did commit the total dollars?

"A. I am certain that we were unanimous in this thinking. It was one of the programs that the Board felt was needed in Westmoreland County and they proceeded along this matter."

Mr. Scherer testified accordingly, at page 38:

"A. Mr. Belden, the best way I can answer that is my recollection is that as Commissioner we met with groups such as this, agreed to help them, then the second stage of this was necessarily to provide the money to do so, and having resolved in advance to do this and it would have been my view that having not seen the records, and not knowing whether or not there was a previous resolution, and I can best explain this by telling you that we have resolved to do this is my recollection, and once the budget was passed, we informed the municipality that this money had been allocated to them and they were to receive it, that is the best way I can explain it.

"Q. If you had not previously resolved, and I take it you mean formally resolved, if you had not previously resolved to do that, then it would be necessary to budget that item each year to carry forth your intentions?

"A. I think our understanding there was that it would be allocated each year at the time we made this commitment. It would be allocated each year in so long as it took to fulfill that requirement."

And Mr. Kelley testified likewise, at pages 2-4:

"Q. Would you relate to the Court please your recollection as to whether or not you had any discussions with the city officials of the City of Jeannette and/or the City of Arnold relative to the matters alleged in the Complaint?

"A. Yes. Mr. Conti, it came up more on the initiative of the city officials. At the time the municipality in the county that took the lead was the Borough of Latrobe, that would be with county participation. Some of the other cities on their own have participated in a number of these Federal program grants, and the Borough of Latrobe came in and we had agreed to sponsor because we thought as a matter of policy of the county the county government at that time to help and contribute and stimulate the local municipalities who participated in these programs that we would give them some county aid. After Latrobe undertaking, then the City of Arnold and the City of Jeannette came. I can't recall what sequence they came, but they came in through official requests to us and had informal discussions in the chambers of the Commissioners' Office in the Courthouse.

"Q. And what was the nature of that request?

"A. The nature of their request was for so many dollars over a period of three years to help defray the local share of the program.

"Q. And was that amount of money about one hundred and thirty five thousand dollars?

"A. I believe it was. I have not checked that precisely and I would rely on your figures and refreshment.

"Q. What, if anything, did the Board do in response to these requests?

"A. The Board made a commitment of paying the share of the county's participation over a three-year period.

"Q. And would that have been in the total amount of one hundred and thirty five thousand dollars?

"A. Approximately combined, a combined contribution.

"Q. How was that to be paid?

"A. Over a three-year period of equal installments.

"Q. Commencing what year?

"A. I believe the next year if I am not mistaken; I am not sure, I believe it was the next budgeted year.

"Q. That would be 1971?

"A. Yes.

"Q. So, if the one hundred and thirty five thousand dollars is correct, then forty-five thousand would be payable to each of the cities in the year 1971, 1972, and 1973?

"A. That is correct, that was the commitment that was made at the time."

Pursuant to this commitment, these commissioners did then, on January 5, 1971, adopt a budget which appropriated the sum of $45,000 to each of plaintiffs for the year 1971. Plaintiffs were then notified of the board's action by letters of January 5, 1971, sent by Mr. Homer Huhn, Chief Clerk, which read:

"Be advised that the Board of Commissioners, at their regular meeting held Tuesday, January 5, 1971, adopted the 1971 budget which provides that $45,-000.00 per year for a period of three years beginning in 1971 would be appropriated to the City of Jeannette* for the Code Enforcement Program.

"Please advise this office, by letter, at such time as the $45,000.00 for 1971 will be payable."

---

* City of Arnold in plaintiffs' exhibit No. 1.

Again, all three of the commissioners testified that these letters accurately reflected their intent and commitment and were sent by Mr. Huhn with their authority.

The testimony then disclosed that each of plaintiffs received the sum of $45,000 in the year 1971 and the year 1972. In 1973, the county refused to pay the third installment. Notice should be taken that the membership of the board of commissioners changed in January of 1972 to James R. Kelley, Robert G. Shirey and Dorothy K. Shope, and that the subject payments were included in the amended budget adopted by this board for the year 1972.

In reliance upon the verbal and written commitment of the county, the City of Jeannette did enter into a contract with the United States of America, Department of Housing and Urban Development, and committed itself to the payment of the sum of $135,000 to its Federally Assisted Code Enforcement Project on July 9, 1971. Further, the City of Jeannette did enter into a contract with the Redevelopment Authority of Westmoreland County to administer the project and guaranteed to them the total funds needed, said contract being dated March 2, 1971. Likewise, the City of Arnold entered into identical contracts on June 21, 1971, and February 25, 1971, respectively.

Defendant, through its sole witness, Robert G. Shirey, stated that the minutes of the Westmoreland County Board of Commissioners do not contain any "Resolution" or record of the subject action and three-year commitment on the part of the 1971 board. Accordingly, it was his opinion that the county does not have an "obligation" to pay the requested funds. If there were a resolution, he conceded that they would have an obligation to honor the commitments.

Mr. Kelley testified that it was his opinion that fiscal

matters dictated the board's action in not budgeting the funds for 1973. The third member of the board, Dorothy K. Shope, did not testify; however, several of her letters to the City of Arnold were introduced. She too, however, gave fiscal reasons for not including the funds in the 1973 budget. Neither Mr. Kelley nor Mrs. Shope mentioned the existence or nonexistence of a legal obligation.

It is also noted that on March 7, 1974, the County of Westmoreland had investments and checking accounts in various banks and institutions in the amount of $6,251,399.16; that it had Revenue Sharing Funds in banks in the sum of $2,962,000 which had not been allocated or spent.

## FINDINGS OF FACT

1. Plaintiff, the City of Jeannette, is a municipal corporation, a third class city, duly organized and existing under the laws of the Commonwealth of Pennsylvania and is situate in Westmoreland County, Pa.

2. Plaintiff, the City of Arnold, is a municipal corporation, a third class city, duly organized and existing under the laws of the Commonwealth of Pennsylvania and is situate in Westmoreland County, Pa.

3. That defendants, Dorothy K. Shope, Robert G. Shirey and James R. Kelley are the duly elected County Commissioners in and for Westmoreland County, Pa., a body politic, organized and existing under the laws of the Commonwealth of Pennsylvania and situate in the Commonwealth of Pennsylvania; the same having assumed office on January 3, 1972.

4. That during the years 1970 and 1971, the Board of Commissioners of the County of Westmoreland consisted of Bernard F. Scherer, John J. LaCarte and James R. Kelley.

5. That the board of county commissioners, consist-

ing of Bernard F. Scherer, John J. LaCarte, and James R. Kelley, did, prior to January 5, 1971, verbally and informally agree with plaintiffs to pay over to each of plaintiffs the sum of $135,000, payable in three equal annual installments commencing in the year 1971, for use in their Federally Assisted Code Enforcement Projects.

6. That it was the intent of the board of commissioners, comprised of Bernard F. Scherer, John J. LaCarte and James R. Kelley, to pay the sum of $135,000 to each of the plaintiffs, in three equal annual installments, commencing in the year 1971; and it was their intent to commit the County of Westmoreland to the making of said payments.

7. That the board of commissioners, on January 5, 1971, at an official meeting thereof, did unanimously approve, by official vote, the 1971 budget for the County of Westmoreland, whereby the first annual installment was budgeted for payment pursuant to the intent and commitment of the Board of Commissioners.

8. That on January 5, 1971, a letter was sent to each of plaintiffs under the signature of Homer Huhn, Jr., chief clerk to the board of commissioners, wherein said plaintiffs were advised that the board of commissioners had formally approved the granting to each of them of the sum of $135,000, payable in three equal annual installments commencing in the year 1971.

9. That the correspondence of January 5, 1971, accurately reflects the intent to commit the County of Westmoreland to the payment of the sum of $135,000 to each of the plaintiffs on the part of the board of county commissioners, comprised of Bernard F. Scherer, John J. LaCarte and James R. Kelley, individually and as the board of commissioners; and the correspondence of January 5, 1971, accurately reflects

the official action that said board of commissioners intended to take to formalize said commitment and obligation.

10. That the County of Westmoreland did pay to each of the plaintiffs in the year 1971 the sum of $45,000.

11. That the board of commissioners, comprised of Bernard F. Scherer, John J. LaCarte and James R. Kelley, did adopt a budget for the year 1972 which provided for the second annual payment to each of the plaintiffs.

12. That the board of commissioners, comprised of Dorothy K. Shope, Robert G. Shirey and James R. Kelley, did adopt an amended budget for the year 1972 which provided for the second annual installment to each of the plaintiffs.

13. That the County of Westmoreland did pay to each of the plaintiffs the sum of $45,000 in the year 1972.

14. That the first two annual payments were made to plaintiffs pursuant to budget appropriations adopted at official meetings of the respective boards of commissioners.

15. That the budget appropriations for the years 1971 and 1972 were made pursuant to the intent and resolve of the board of commissioners to commit the County of Westmoreland to the payment of the sum of $135,000 to each of the plaintiffs, payable in three equal annual installments commencing in the year 1971, and pursuant to formal board action intended to effectuate the same.

## ARGUMENT

Defendants' brief in support of its preliminary objections to the complaint in mandamus in the nature of the demurrer (which brief defendant has made a part of the present brief) reads as follows:

Apparently, plaintiffs claim that the resolution of January 5th, 1971, was a promise to make payments of $45,000 per year to each of the plaintiff municipalities for the years 1971, 1972 and 1973. No copy of the resolution is attached to the complaint. Plaintiffs must believe, although they have not so alleged, that the "promise" of the said resolution was binding upon the successors of that Board of County Commissioners. There is no allegation that the present Board of County Commissioners is bound by the actions of the previous Board of County Commissioners; nor is there any allegation that the plaintiff municipalities have a vested right to receive such monies by way of a grant from the present Board of County Commissioners.

No mention was made in defendants' brief of the existence or non-existence of the resolution alleged in paragraph four of plaintiffs' complaint. The allegation that the resolution did not exist or not noted in the minutes was brought up at the subsequent hearing on March 8, 1974.

It now appears that the defendants, according to Commissioner Shirey's testimony, abandoned the defense in support of the demurrer and bases its defense on the absence of the resolution or failure of the resolution being noted in the minutes of the meeting of the County Commissioners.

Section 2101 of The County Code of August 9, 1955, P. L. 323, 16 PS §2101, grants authority to the defendants to make appropriations of the type that are the subject matters of the present action. No special procedure is provided. This section has been interpreted even further by the Supreme Court to allow for multiyear commitments. In the case of MacCalman v. Bucks County, 411 Pa. 316 (1963), the court stated, at page 321:

"The court below took the position: (1) that the County did have the legal authority to appropriate its

funds to the Authority for the purposes and in the manner contemplated, said authority being §§2101 and 2132 of The County Code of August 9, 1955, P. L. 323, 16 PS. §§2101, 2132; (2) that if the Service Agreement is 'deemed to constitute a contractual impairment or limitation upon future county commissioners in a legislative or governmental function, then we [the court below] believe that considerations of urgency and necessity, especially when coupled with the stipulated public interest and absence of bad faith or ulterior motivation, should permit the commitment to be sustained as an exception to the general rule', i.e., that a legislative body, or municipal board having legislative authority, may not properly bind its successors and may not legally enter into a contract which will extend beyond the term for which the members of the body were elected; (3) that, if the commitment by the County be considered proprietary, rather than legislative or governmental, in character, the County has the power through its commissioners to make obligations extending beyond the tenure of office of the present commissioners; (4) that the commitment by the County for annual appropriations under the Service Agreement does not constitute the incurring of an indebtedness by the County because such appropriations are expressly payable out of 'current revenues'.

"From our examination of the record and the applicable law we are satisfied that the County has the legal authority under the instant factual situation to enter into this Service Agreement and to make the appropriations provided thereunder and that the court below properly dismissed MacCalmans' complaint."

These principles were affirmed in the use of Conrad v. Pittsburgh, 421 Pa. 492 (1966).

Thus, upon the above-stated Act of Assembly and cases, and upon the testimony of Mr. Shirey, we must

conclude that the county does have the authority to make commitments for the purposes and of the type and duration as those that are the subject matter of this action. What the question resolves itself into is whether a formal recorded resolution is necessary. That the board "resolved" to make the commitment is undisputed from the testimony of the three members of the 1971 board. That notice of formal action on this commitment was given by the letters of January 5, 1971, is undisputed. That the 1971 board budgeted and paid the first installment and the 1972 board budgeted and paid the second installment is undisputed. That the year 1971 and 1972 budgets were adopted at official meetings is undisputed. It is submitted that these constitute a formal adoption and recording of that which the county, acting through its commissioners, resolved and committed itself to do.

Defendant county now argues that a formal recorded resolution is needed that embodies the entire commitment before it is obligated or authorized to make the third payments. It is submitted that if such is necessary for the third payments, such would have been necessary for the first and second payments. The 1971 board ratified their resolution when they adopted the 1971 budget, the 1972 board did likewise and the 1973 board is bound thereby.

The doctrine of equitable estoppel also precludes defendant from maintaining its position. Each of the plaintiffs acted in reliance of defendant's commitment. Defendant itself acted in furtherance of its commitment. The lack of a formal recording of this commitment by defendant itself should not be available as a defense. The Supreme Court, in the case of Union County v. Northumberland County, 281 Pa. 62 (1924), stated, at page 69:

"Appellant calls attention to the fact that the bridge in question was never formally recorded as a county bridge in Northumberland County. This would have been a valid objection if interposed before the bridge was reconstructed in 1893 (Com. ex. rel. v. Bowman, 218 Pa. 330; R. R. Co. v. Lawrence County, 198 Pa. 1), but comes too late, after that county joined in such reconstruction and in the maintenance thereof as an inter-county bridge for thirty years."

To adhere to the position of defendant would require every party having dealings with the county to personally attend the meetings and to personally check to see that the board's action was properly recorded in the minute books. The letters of January 5, 1971, should be sufficient guarantees of the veracity of the matters set forth therein and of the board's action.

It can be conceded, arguendo, that the County of Westmoreland can act only through its commissioners sitting as a duly constituted body in session. Defendants, in attacking the proceedings of their predecessors, do so not on a substantive ground but on a procedural ground, i.e., that there is no record of a resolution. Their argument attempts to go beyond this and include the lack of official action. This, however, they cannot do in light of the testimony which indicates that a vote was taken at an official meeting on January 5, 1971, and that the then constituted board of commissioners intended by its vote to commit the county to the payment of a total sum over a period of three years. The failure of procedure, at best, can go only to the recording of a separate minute. In support of this, the testimony disclosed that the letters of January 5, 1971, accurately reflect the intent and action of the board. A reading of these letters discloses not only the intention but also formal action in execution of this intention. As in all cases, the parties may

explain or amend their writing by parol evidence. In this case, the undisputed and unanimous oral testimony of the 1971 board of commissioners establishes its intention and sets the record straight. The minute book of Westmoreland County is not so sacred as to be immune from correction.

## CONCLUSIONS OF LAW

1. That plaintiffs are municipal corporations, being third class cities, organized and existing under the laws of the Commonwealth of Pennsylvania situate in Westmoreland County.

2. That defendants are the duly elected Board of Commissioners for the County of Westmoreland, a body politic, organized and existing under the laws of the Commonwealth of Pennsylvania situate in the Commonwealth of Pennsylvania.

3. The court has jurisdiction over the parties in the subject matter.

4. That the County of Westmoreland did, on January 5, 1971, by and through its board of commissioners, obligate itself to the payment of the sum of $135,-000 to the City of Jeannette and the payment of the sum of $135,000 to the City of Arnold, to be paid in three equal annual installments commencing in the year 1971.

5. That the correspondence of January 5, 1971, accurately reflects the intent of the board of commissioners and accurately reflects the formal action and obligation intended to be created.

6. That the correspondence of January 5, 1971, constitutes a sufficient and legal recording of the formal action of the board of commissioners.

7. That the 1972 board of commissioners did confirm and ratify the obligation toward plaintiffs created by the 1971 board of commissioners.

8. That a valid and legal obligation exists on the

part of the County of Westmoreland for the payment of the sum of $45,000 to each of the plaintiffs.

9. That the relief prayed for by plaintiffs, being the payment of the third installments in the amount of $45,000 each, constitutes a ministerial act, without the exercise of discretion on the part of defendants.

10. That the County of Westmoreland is authorized and empowered to make appropriations of funds for the purposes of the appropriations made to plaintiffs by the provisions of section 2101 of the County Code, 16 PS §2101.

## DECREE NISI

And now, May 6, 1974, a writ of mandamus be, and the same hereby is granted, and it is herein ordered and decreed that defendant, the Board of Commissioners of Westmoreland County, Pa., pay the City of Arnold and the City of Jeannette each the sum of $45,000 forthwith.

This decree to become final unless exceptions are filed within 20 days of the date of this decree.