PENN SQUARE GENERAL CORPORATION, the General Partner of Penn Square Partners, a Pennsylvania Limited Partnership, and the Redevelopment Authority of the City of Lancaster

v.

COUNTY OF LANCASTER, Board of County Commissioners of the County of Lancaster, Molly Henderson, Commissioner, and, Richard Shellenberger, Commissioner.

Lancaster County Convention
Center Authority

v.

County of Lancaster, Board of County Commissioners of the County of Lancaster, Molly Henderson, Commissioner, and, Richard Shellenberger, Commissioner.

Appeal of: County of Lancaster, Board of County Commissioners of the County of Lancaster, Molly Henderson, Commissioner, and, Richard Shellenberger, Commissioner.

Penn Square General Corporation, and
The Redevelopment Authority of
the City of Lancaster

v.

County of Lancaster, Board of County Commissioners of the County of Lancaster, Richard Shellenberger and Molly Henderson, and April M. Koppenhaver.

Lancaster County Convention
Center Authority

v.

County of Lancaster, Penn Square General Corporation, The Redevelopment Authority of the City of Lancaster, Board of County Commissioners of the County of Lancaster, Richard Shellenberger and Molly Henderson.

Appeal of: April M. Koppenhaver.

Commonwealth Court of Pennsylvania.

Argued June 13, 2007.

Decided Nov. 13, 2007.

Howard L. Kelin, Lancaster, for appellants.

David H. Pittinsky, Philadelphia, for appellees, Penn Square General Corporation and the Redevelopment Authority of the City of Lancaster.

John C. Fenningham, Trevose, for appellee, Lancaster County Convention Center Authority.

BEFORE: LEADBETTER, President Judge, and COLINS, Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SIMPSON.

In these consolidated appeals dealing with the controversial Lancaster Convention Center and Hotel,[1] the County of Lancaster, the Board of County Commissioners of Lancaster County, Commissioners Molly Henderson and Richard Shellenberger (collectively; Defendants); and April M. Koppenhaver (Taxpayer), petition for review of an order of the Court of Common Pleas of Lancaster County (chancellor) that entered a permanent injunction on behalf of Plaintiffs[2] prohibiting Defendants from enforcing County Resolutions 36 and 37 of 2006. For the following reasons, we affirm.

## I. Background

### A. Factual and Procedural History

This appeal is the latest in a series of appeals arising out of the efforts of numerous governmental and private parties to construct a hotel and convention center in downtown Lancaster in order to revitalize that area and increase tourism in Lancaster County. In November 1999, the General Assembly enacted the Third Class County Convention Center Authority Act (Convention Center Act)[3] as a subdivision of The County Code.[4] Shortly thereafter, the County passed Ordinance 44 (1999) creating the Convention Center Authority. Pursuant to Section 2399.55(b) of the Convention Center Act, the Convention Center Authority is authorized:

(10) *To borrow money* for the purpose of paying the costs of a project and to evidence the same; make and *issue negotiable bonds* of the authority; secure payment of the bonds, or any part there-

---

1. *See Koppenhaver v. Dep't of Cmty. and Econ. Dev.*, 898 A.2d 654 (Pa.Cmwlth.), *appeal denied*, 590 Pa. 663, 911 A.2d 937 (2006) (challenge by taxpayer to validity of the City of Lancaster's debt proceedings under the Local Government Unit Debt Act, 53 Pa.C.S. §§ 8001–8271); *Smithgall v. Campbell*, 885 A.2d 669 (Pa.Cmwlth.2005) (challenge to legality of debt statements for project guaranties); *Bold Corp. v. County of Lancaster*, 790 A.2d 1099 (Pa.Cmwlth.), *vacated and remanded*, 569 Pa. 107, 801 A.2d 469 (2002), *aff'd on remand by mem. op.* (Pa.Cmwlth., No. 1227 C.D.2001, filed October 4, 2002) (challenge by area hotels to hotel room rental tax to pay for project).

2. Plaintiffs are Penn Square General Corporation, the General Partner of Penn Square Partners (Developer), the Redevelopment Authority of the City of Lancaster, and the Lancaster County Convention Center Authority (Convention Center Authority).

3. Act of August 9, 1955, P.L. 323, *as amended, added by* the Act of November 3, 1999, P.L. 461, 16 P.S. §§ 2399.1–2399.73.

4. Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §§ 101–3000.3903.

of, by *pledge or deed of trust of all or any of its revenues (including any hotel room rental tax)*, rentals, receipts and contract rights; *make such agreements with the purchasers or holders of the bonds or with other obligees of the authority in connection with the bonds,* whether issued or to be issued, as the authority shall deem advisable, which agreements shall constitute contracts with the holders or purchasers; obtain such credit enhancement or liquidity facilities in connection with the bonds as the authority shall determine to be advantageous; and, in general, provide for the security of the bonds and the rights of the bondholders.

\* \* \*

(24) To do all acts and things necessary or convenient for the promotion of its purposes and the general welfare of the authority and to carry out the powers granted to it by this subdivision or any other act.

16 P.S. §§ 2399.55(b)(10), (24) (emphasis added).

### 1. Hotel Room Rental Tax

Additionally, pursuant to Section 2399.72(a) of the Convention Center Act, the county in which the convention center will be located is authorized to impose a hotel room rental tax on the consideration received by each hotel operator, per transaction, within the market area. 16 P.S. § 2399.72(a). Here, the County imposed a hotel room rental tax on each hotel operator in the market area, which Ordinance 45 defined as the County. *See* Ordinance 45 (1999). Pursuant to Section 2399.72(c) of the Convention Center Act, the Convention Center Authority receives 80% of the revenues from this tax; the County's tourist promotion agency receives the remaining 20%. 16 P.S. § 2399.72(c).

### 2. Hotel Room Rental Tax Revenue Bonds

As a primary source of revenue for the Convention Center project, the Convention Center Authority planned to issue a 2003 series of Hotel Room Rental Tax Revenue Bonds (the 2003 Bonds). To accomplish this bond issue and maximize revenues from it, the Convention Center Authority needed a guaranty from a local government unit. More specifically, in order to issue an additional $15,000,000 in bonds and receive a $15,000,000 redevelopment assistance grant from the Commonwealth, the Convention Center Authority needed to show that a local governmental unit with taxing authority would provide matching funds.

In short, without a local government unit guaranty, the Convention Center Authority could issue bonds in the amount of $25,000,000. However, with such a guaranty, the Convention Center Authority could obtain the redevelopment grant and issue bonds in the amount of at least $40,000,000. Here, the only two government units able to make the guaranty were the City of Lancaster and the County. Because of the County's higher bond rating, a County guaranty would enable the Convention Center Authority to obtain a more favorable interest rate and lower insurance costs.

### 3. Ordinances 73 and 74 (2003)

In October 2003, the County adopted Ordinance 73, which authorized the execution of the Guaranty Agreement (Guaranty), which would guarantee the 2003 Bonds in the maximum principal amount of $25,000,000. *See* Reproduced Record (R.R.) at 311a–17a. Ordinance 73 required the guaranteed bonds be issued pursuant to a Trust Indenture subject to several conditions. *Id.*

As taxpayer protection, Ordinance 73, § 7(b) imposed the following conditions on the Trust Indenture:

(b) The Indenture shall contain a requirement (the "Indenture Requirement") *that, as a condition to the release of the proceeds of the Bonds on deposit in the construction fund* or project fund, as applicable, to be established under the Indenture, the [Convention Center Authority] shall have *certified* to the Trustee, the following:

(i) That the [Convention Center Authority] *has sufficient funds to complete the construction of the Facilities* in full accord with the final plans and specifications prepared by the architect for the Facilities and approved by the [Convention Center Authority]; and

(ii) A new hotel designed to support the program of the Facilities and provide sufficient rooms and amenities to serve as a "headquarters hotel" for the Facilities, shall be constructed in conjunction with the Facilities.

The Indenture also shall contain a requirement that the Indenture Requirement shall not be amended without the prior written consent of the County. (R.R. at 315a; emphasis added.)

In December 2003, the County adopted Ordinance 74 in order to permit the Convention Center Authority to place the 2003 Bonds with a commercial institution. *See* R.R. at 922a–24a.

### 4. Guaranty Agreement

On December 15, 2003, the Guaranty and the Trust Indenture were formally executed. The Guaranty noted the Convention Center Authority intended to issue the 2003 Bonds in the aggregate principal amount of $40,000,000. R.R. at 69a. The Guaranty also provided, the term "the Bonds" includes any bonds later issued under the Trust Indenture to refund the 2003 series. *Id.* Section 3.08 of the Guaranty provides that the County's obligation under the Guaranty is absolute, irrevocable and unconditional, regardless of any other agreement or instrument, as long as the Bonds remain outstanding. *Id.* at 74a.

### 5. Trust Indenture

Pursuant to the Trust Indenture, which named Manufacturers & Traders Trust Company as Trustee, the Convention Center Authority issued a $40,000,000 bond, which Citizens Bank purchased. The Indenture provides that before construction of the Convention Center project may commence, the 2003 Bonds must be converted from taxable to tax-exempt. Specifically, Section 5.02 of the Indenture provides:

*(c) Construction Account of the Project Fund.* No disbursements shall be made from the Construction Account of the Project Fund until the interest rate on the Bonds has been converted to a Tax–Exempt Variable Rate or a Tax–Exempt Term Rate pursuant to the provisions of this Indenture.... (R.R. at 388a; emphasis deleted.)

In addition, at County bond counsel's request, the Convention Center Authority added Section 2.05(b) to the final draft of the Indenture to satisfy the conditions in Ordinance 73, § 7(b). Indenture Section 2.05(b) provides (emphasis added):

On or before the Tax–Exempt Conversion Date, the [Convention Center Authority] *shall cause to be delivered* to the Trustee (1) complete plans and specifications with respect to layout, design, land area, and all other matters with respect to the Convention Center; (2) *a project budget which shall include a detailed itemization* of all construction costs to be incurred in connection with the Convention Center, including (without limitation) all architectural, engi-

neering and consulting fees, and a detailed itemization of all non-construction costs to be incurred by the [Convention Center Authority] in connection therewith. . . . (R.R. at 363a.)

### 6. Resolutions 36 and 37 (2006)

In January 2004, Defendants Henderson and Shellenberger, who opposed the Convention Center project during their 2003 election campaign, took office. During the nearly two and a half years following the execution of the Guaranty, the plans for the project changed, and its estimated cost increased. Given these developments, in May 2006 a divided Board of Commissioners approved (by a 2–1 vote) Resolutions 36 and 37 challenging the continued validity of the Guaranty. See R.R. at 110a–13a; 115a–17a. Chiefly, the Resolutions challenge the validity of the Guaranty upon conversion of the 2003 Bonds to tax-exempt bonds.

In Resolutions 36 and 37, the County asserts the Convention Center Authority unilaterally altered the underlying obligation which is the subject of the Guaranty so as to result in a different County liability. The Resolutions note the Convention Center Authority plans to finance a much greater amount than the initial $40,000,000. Also, the Resolutions claim the Convention Center Authority no longer plans to prioritize proceeds from the hotel room rental tax to debt service on the 2003 Bonds; rather, the tax proceeds will be devoted both to the 2003 Bonds and to later-issued bonds in parity. Resolutions 36 and 37 further assert that the Convention Center project will sustain annual operating losses much greater than initially estimated by the Convention Center Authority, and that the Indenture did not contemplate either an "interest rate swap" from variable to fixed rate on the 2003

Bonds, or the subsequent remarketing of the 2003 Bonds as tax-exempt.

Additionally, Resolutions 36 and 37 provide the County will consider the following actions to require the issuance of a new guaranty agreement: any action by the Convention Center Authority to remarket the 2003 Bonds as tax-exempt Bonds; any action to enter into a interest rate "swap agreement" involving the 2003 Bonds; or any action to otherwise attach the Guaranty to any borrowing other than the existing 2003 bond held by Citizens Bank. In particular, Section 3 of Resolution 37 further provides:

(B) This Board of Commissioners resolves and determines:

(I) not to approve any such new County Guaranty; and

(II) not to allow the attachment of any County Guaranty to any [Convention Center Authority] obligation other than the Citizens Bank Bond secured by the Escrow. . . . (R.R. at 117a.)

### B. Current Litigation

#### 1. Plaintiffs' Complaints

In June 2006, Plaintiffs Developer and Redevelopment Authority filed a three-count complaint against Defendants seeking equitable, declaratory and mandamus relief invalidating Resolutions 36 and 37. The same day, the Plaintiff Convention Center Authority filed a similar three-count complaint. Both actions requested preliminary and permanent injunctions preventing Defendants from either taking any action under Resolutions 36 and 37 adverse to the Convention Center project or reducing the market area subject to the hotel room rental tax.

#### 2. Preliminary Injunction

In July 2006, the chancellor held a lengthy preliminary injunction hearing.

*See* R.R. at 465a–641a. Taxpayer intervened. All parties agreed to limit the subject of the preliminary injunction to two areas, Resolutions 36 and 37, and the potential reduction of the market area of the hotel room rental tax.

■ After rejecting Defendants' claims that Plaintiffs were not entitled to equitable relief under the "unclean hands" doctrine,[5] the chancellor determined Plaintiffs established the essential prerequisites for a preliminary injunction.[6] As to immediate and irreparable harm, the chancellor determined that based on the testimony of the Convention Center Authority's financial advisor, Thomas Beckett (Authority's Financial Advisor), an immediate injunction was needed lest the 2003 Bonds become unmarketable and the entire project fail. The chancellor observed he could not calculate Plaintiffs' damages if they prevailed on the merits. Ultimately, the chancellor issued a preliminary injunction enjoining the enforcement of Resolutions 36 and 37, pending a permanent injunction hearing.

However, the chancellor denied Plaintiffs' request for a preliminary injunction precluding Defendants from reducing the market area of the hotel room rental tax. The chancellor noted that Defendants took no such action and that the judiciary cannot enjoin a legislative branch of government from passing legislation.

**3. Permanent Injunction**

In September 2006, the chancellor held a permanent injunction hearing. *See* R.R. at 652a–758a. At the hearing, the parties agreed to incorporate all evidence presented at the preliminary injunction into the permanent injunction record.

■ Ultimately, the chancellor held for Plaintiffs and permanently enjoined Defendants from enforcing Resolutions 36 and 37. In his decision, the chancellor began by reviewing the criteria for issuing a permanent injunction. "To justify the award of a permanent injunction, the party seeking relief 'must establish that his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested.'" *Kuznik v. Westmoreland County Bd. of Comm'rs,* 588 Pa. 95, 117, 902 A.2d 476, 489 (2006) (quoting *Harding v. Stickman,* 823 A.2d 1110, 1111 (Pa.Cmwlth.2003)).

**a. Clear Right to Relief**

**(i). Indenture; Ordinance 73, § 7(b)**

In determining whether Plaintiffs established a clear right to relief, the chancellor addressed several issues. First, the chancellor reviewed Defendants' assertion the Guaranty is invalid because Indenture Section 2.05(b), which governs conversion of

---

5. A party seeking equitable relief must have clean hands. *Giddings v. State Bd. of Psychology,* 669 A.2d 431 (Pa.Cmwlth.1995). "[A]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for closing the doors of a court of equity to one tainted with inequitableness." *Id.* at 434–35.

6. *See Free Speech, LLC v. City of Phila.,* 884 A.2d 966 (Pa.Cmwlth.2005) (party seeking a preliminary injunction must show: it is necessary to prevent immediate and irreparable

harm that cannot be compensated by damages; greater injury will result from refusing it than granting it; it will not substantially harm other parties in the proceedings; it will restore the parties to their status as it existed prior to the alleged wrongful conduct; the activity it seeks to restrain is actionable and the party is likely to prevail on the merits; the injunction is reasonably suited to abate the offending activity; and a preliminary injunction will not adversely affect the public interest).

the 2003 Bonds to tax-exempt status, did not conform to the requirements of Ordinance 73, § 7(b).

The Ordinance mandated that the Indenture require the Convention Center Authority to "certify" it has "sufficient funds" to complete the construction of the facilities. Accordingly, Indenture Section 2.05(b) provides that on or before the tax-exempt conversion date, the Convention Center Authority "shall deliver" to Trustee a "project budget" detailing all construction and non-construction costs of the project.

Based on the testimony of Douglas Rauch (Attorney Rauch), the County's bond counsel and drafter of Ordinance 73 and the Guaranty, and the testimony of Peter Edelman (Attorney Edelman), bond counsel for the Convention Center Authority who drafted the Indenture, the chancellor determined Indenture Section 2.05(b) with the Ordinance. In particular, the chancellor noted bond counsel worked together in drafting the documents and that Attorney Edelman submitted a proposed draft of Indenture Section 2.05(b) to Attorney Rauch, who approved it on behalf of the County before the Guaranty was executed.

### (ii). Proprietary or Governmental Function

The chancellor also rejected Defendants' argument that the predecessor Board of Commissioners, in executing the Guaranty, performed a governmental function that cannot bind the successor Board to a contract that extends beyond the former Board's term. Noting the County is not statutorily required to issue the Guaranty, the chancellor concluded the issuance of the Guaranty was a proprietary rather than governmental function. *See Program Admin. Servs., Inc. v. Dauphin County Gen. Auth.,* 874 A.2d 722 (Pa.Cmwlth.

2005), *aff'd,* —— Pa. ——, 928 A.2d 1013 (2007) (a proprietary function is one that government is not required to perform and is binding on successor administrations). Thus, the chancellor determined the current Board of Commissioners is bound by the Guaranty.

### (iii). Additional Bonds

The chancellor also determined the Convention Center Authority's decision to issue an additional 2006 series of bonds in the amount of $14,000,000 (Additional Bonds), without the County's consent, and to use the hotel room rental tax revenues to repay the combined debt service on the two series of bonds in parity did not invalidate the Guaranty. The chancellor noted the Guaranty only applies to the 2003 Bonds, not the Additional Bonds. Therefore, the issuance of the Additional Bonds did not increase or change the County's obligation under the Guaranty.

### b. Damages

The chancellor next determined the injunction was necessary to avoid an injury that could not be compensated in damages. Without financing, the project will die. The chancellor again emphasized there is no imaginable way to calculate Plaintiffs' potential damages if they prevail.

### c. Greater Injury From Refusing Injunction

Finally, the chancellor determined greater injury will result from refusing rather than granting the injunction. If the injunction is granted, the chancellor observed, the Guaranty remains in effect. Even so, the County's Treasurer testified the hotel room rental tax revenues should cover the annual combined debt service. Thus, the chancellor concluded there would be no injury to the County.

■ Having determined Plaintiffs met the criteria for a permanent injunction, the chancellor enjoined Defendants from enforcing Resolutions 36 and 37. Defendants and Taxpayer appeal.[7] Taxpayer joins in Defendants' arguments.

## II. Current Appeal

■ On appeal, Defendants argue the chancellor erred by enjoining enforcement of Resolutions 36 and 37 because the Guaranty is unlawful. Primarily, Defendants assert the chancellor erred in determining Plaintiffs' right to relief is clear. "To prevail in an action for an injunction, a party must establish that his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested." *Harding,* 823 A.2d at 1111. "A court may not grant injunctive relief where an adequate remedy exists at law." *Id.*

Defendants present four arguments why the Guaranty is invalid. First, Defendants assert the bond sale for the Convention Center project required a guaranty by a local government unit, not a private party; therefore, the former Board of Commissioners performed a "governmental" function that cannot bind the successor Board. Second, in a related argument, Defendants assert the Guaranty is an invalid "midnight contract" issued by the outgoing Board just prior to leaving office, years before it was actually needed, solely for the purpose of removing it from consideration by the incoming Board, who campaigned against it.

Third, Defendants assert the Guaranty is invalid because the Indenture did not include the taxpayer protections specified in Ordinance 73, § 7(b). Fourth, Defendants assert the Guaranty is invalid because the County did not consent to the Convention Center Authority's modification of the Trust Indenture to issue the Additional Bonds, which increases the Convention Center Authority's total debt service and thus the likelihood that the Guaranty will be called.

### A. Proprietary or Governmental Function

■ Defendants first argue the chancellor erred in determining the issuance of the Guaranty constituted a proprietary rather than a governmental function. In short, Defendants assert the execution of the Guaranty was a governmental function because the Convention Center Authority needed a guaranty by a local government unit with taxing authority. Therefore, Defendants assert the Guaranty is not binding on the present Board of Commissioners. In support, the County primarily relies on *Lobolito, Inc. v. North Pocono School District,* 562 Pa. 380, 755 A.2d 1287 (2000).

In *Lobolito,* our Supreme Court held that a memorandum of agreement between a previous school board and a developer, under which the developer proposed to construct and operate a sewage plant, essentially encompassed the governmental function of constructing a new school rather than the arguably proprietary function of providing sewage treatment services. In reaching this conclusion, the Court stated:

7. In reviewing a grant or denial of a permanent injunction, which "will turn on whether the lower court properly found that the party seeking the injunction established a clear right to relief as a matter of law," our standard of review for a question of law is *de novo,* and our scope of review is plenary. *Buffalo Twp. v. Jones,* 571 Pa. 637, 644, 813 A.2d 659, 664 n. 4 (2002).

Unless the school was built, no sewage disposal services would be necessary. Thus, the driving force behind the Memorandum of Agreement was construction of the new school. The services aspect of the agreement would be devoid of meaning without the school board's predicate promise to build the school.

. . . .

Given that the authority to build schools rests with local boards and that decisions concerning the creation and operation of schools is a basic governmental function, we find the successor school board was not obligated to honor the agreement entered into by the predecessor school board and Lobolito. To require such a contract to be enforced would be to inappropriately compel the successor board to either follow the governmental policies of its predecessor or be faced with substantial liability, including the possibility of consequential damages, for merely seeking to implement its own policies.

*Id.* at 387–88, 755 A.2d at 1291 (footnote omitted).

We applied *Lobolito* in *Program Administration Services,* stating "[i]n determining whether an activity is governmental or proprietary the Court will consider whether it: (1) is one that government is not statutorily required to perform; (2) also may be carried on by private enterprise; and (3) is used as a means of raising revenue." 874 A.2d at 726. *See also Associated Pa. Constructors v. City of Pittsburgh,* 134 Pa.Cmwlth. 536, 579 A.2d 461 (1990) (proprietary functions are those that can be carried on by private enterprise and are used as a means of raising revenue).

In *Program Administration Services,* we determined the county authority's "activity of lending money to school districts for financing school construction is proprietary in nature." 874 A.2d at 728. We explained,

this is an activity that the Authority is not required by statute to perform, and it is one that certainly is carried on by many private lenders. The mere fact that the Authority lends money to a school district for school construction does not make the act of lending governmental in character any more than it would be if the loan were made by a private bank. The decision whether to build a school building is a governmental function. *Lobolito.* Here, however, the Authority does not purport to decide whether any school district should build a school; it serves only as a means of financing such projects if one does. (*Id.*)

Applying *Program Administration Services* to the facts here, the chancellor recognized the County was not statutorily obligated to issue the Guaranty and that this is a function capable of being performed by private enterprise. Chancellor's Permanent Inj. Op. at 10. In addition, the chancellor noted that honoring the Guaranty does not impair the current Board of Commissioners' policymaking role. *Id.*

Defendants, however, argue there is no bright line test for discerning governmental functions from proprietary functions. They assert the Guaranty reflects a governmental rather than a proprietary function because the Convention Center Authority needed a guaranty from a government taxing body in order to sell another $15,000,000 in bonds. A private party, Defendants contend, cannot perform this function.

Citing our decision in *Program Admin-*

*istration Services,*[8] Plaintiffs respond the County was not statutorily obligated to issue the Guaranty and that such a guaranty is a typically non-governmental activity. More importantly, Plaintiffs contend, nothing in the Convention Center Act or the Local Government Unit Debt Act requires the County to execute the Guaranty. Further, the construction of a convention center is not a function which a local governmental unit is statutorily required to perform.

Plaintiffs also argue that if local government bond guaranties were considered to be a governmental function, no long-term bonds could ever be issued in Pennsylvania because the bondholders could never be assured the guaranty would remain in place beyond the term of the officials who authorized it. This, Plaintiffs maintain, is an absurd consequence of Defendants' position.

We agree with the chancellor that *Lobolito* and this Court's decision in *Program Administration Services* compel the conclusion that the County's issuance of the Guaranty constituted a proprietary rather than a governmental function. The County is not statutorily obligated to construct the Convention Center project or guaranty the Convention Center Authority's bonds. If the County did not want to issue the Guaranty, it could have refused. Further lending activities, including issuing a guaranty, are activities that may also be carried out by private enterprise. *Program Admin. Servs.; Associated Pa. Constructors.*

Moreover, although the Convention Center Authority concedes it needed a guaranty from a local governmental unit with taxing authority to obtain an additional

financing, this did not statutorily or otherwise obligate the County to issue the Guaranty. The circumstances here did not change the County's issuance of the Guaranty from a proprietary to a governmental function.

Consequently, we conclude the chancellor did not err in determining the County's issuance of the Guaranty constituted a proprietary function. *Lobolito; Program Admin. Servs.*

In addition, nothing in the Supreme Court's recent decision affirming this Court in *Program Administration Services* compels a different conclusion. To the contrary, the Supreme Court's decision supports the result reached by the trial court, although on a different basis.

The Supreme Court looked at the policy basis for the governmental-proprietary distinction, as developed in the common law of this Commonwealth: to permit a newly appointed governmental body to function freely on behalf of the public and in response to the governmental power by which it was appointed or elected. —— Pa. at ——, 928 A.2d at 1017. The Court then examined Section 5607 of the Municipality Authorities Act, 53 Pa.C.S. § 5607, the enabling statute for legislative policy decisions regarding municipal authorities' making of agreements in connection with bonds. 928 A.2d. at 1018. In particular, it looked at statutory language allowing municipal authorities to "make agreements with the purchasers or holders of [authority] bonds or with others in connection with any bonds . . . as the authority shall deem advisable. . . ." *Id.* (*quoting* 53 Pa.C.S. § 5607(d)(12)). Importantly, the Supreme Court concluded the statutory language

embodied "a legislative policy decision favoring predictability, stability and certainty with regard to some range of matters connected with public bond issues by municipal authorities." *Id.* Ultimately, the Court concluded this legislative policy determination prevailed over a competing common law concern relating to the freedom of a new board to respond to popular pressures. *Id.* at 1019.

▮ Here, the Convention Center Act contains functionally identical language as that relied upon by our Supreme Court in *Program Administration Services.*[9] Like the Supreme Court, we conclude the General Assembly thereby made a policy decision favoring predictability, stability and certainty with regard to some range of matters connected with public bond issues by convention center authorities. This policy decision must prevail over competing common law concerns relating to the freedom of a new board of commissioners to respond to popular pressures. This is true regardless of whether the act in question was governmental or proprietary in nature.

For all these reasons, no reversible error is evident in the trial court's conclusion on this first issue.

### B. Midnight Contract

▮ In a related argument, Defendants assert the Guaranty is an invalid "midnight contract" prematurely executed by the outgoing Board of Commissioners because the incoming Board would not approve it. They rely on *Lobolito,* The chancellor, however, found this allegation irrelevant

because the issuance of the Guaranty was a proprietary function binding on the successor Board regardless of whether it was a "midnight contract." Chancellor's Permanent Inj. Op. at 10.

Because as discussed above the issuance of the Guaranty constitutes a proprietary function, *Lobolito* is inapplicable here.

Further, the Supreme Court in *Program Administrative Services,* noted in *dicta* there may be situations where a holdover contract entered into in bad faith by an outgoing board may be voided. However, such is not the case here.

The Convention Center Authority's Executive Director, David Hixson (Director Hixson) offered unrebutted testimony that Defendants Henderson and Shellenberger, the Commissioners who later passed Resolutions 36 and 37 in May 2006 challenging the continued validity of the Guaranty, never previously contested or questioned the Guaranty as being executed in bad faith or being invalid or unenforceable for any reason. R.R. at 479a. To the contrary, they acknowledged at a 2004 meeting of community leaders and government officials that the County had guaranteed the Convention Center Authority's bond issue.[10] *Id.; see also Hyam v. Upper Montgomery Joint Authority,* 399 Pa. 446, 160 A.2d 539 (1960) (unless shown that former governing body motivated by fraud, lack of responsibility, arbitrary considerations or capricious beliefs, court will not substitute its judgment for that of duly elected public officials).

---

9. Section 2399.5(b)(10) of the Convention Center Act, 16 P.S. § 2399.5(b)(10), is quoted with added emphasis at the beginning of this opinion. Further, Section 202(4) of The County Code, grants to each county the power to "[m]ake contracts for carrying into execution the laws relating to counties and for all lawful purposes." 16 P.S. § 202(4).

10. Director Hixson also testified the predecessor Board of Commissioners understood that executing the Guaranty at that time would enable the Convention Center Authority to obtain a $15,000,000 state grant and additional borrowing capacity. R.R. at 478a–79a.

Also, Mr. Justice Eakin, in his concurring opinion in *Program Administration Services,* noted that in addition to a good faith inception of the contract, the municipality should derive some benefit, financial or otherwise, to bind successor boards to a long-term contract. 928 A.2d at 1021. Here, the Guaranty itself acknowledges that undertaking the Convention Center project will benefit the interests of the County and its residents. R.R. at 69a.

As a result, we conclude the record supports the chancellor's determination that the issuance of the Guaranty was a legitimate exercise of a proprietary function binding on successor Boards. In addition, it was not a one-sided agreement from which the County will derive no benefit. Thus, we reject Defendants' assertion the Guaranty is invalid because it was executed in bad faith or as "midnight contract" solely to bind the successor Board. *Program Admin. Servs.*

### C. Ordinance 73's Indenture Requirement

Defendants assert the chancellor erred in issuing the permanent injunction because the Indenture fails to incorporate the specific taxpayer protections mandated by Ordinance 73, § 7(b). Contrary to the chancellor's conclusions, the Guaranty is invalid because it could not be executed unless the Indenture contained the required protections.

As noted above, Ordinance Section 7(b) provides that the Indenture:

*as a condition to the release of the proceeds of the Bonds on deposit in the construction fund* or project fund, as applicable, to be established under the Indenture, the [Convention Center Authority] shall have *certified* to the Trustee, the following:

(i) That the [Convention Center Authority] *has sufficient funds to complete the construction of the Facilities* in full accord with the final plans and specifications prepared by the architect for the Facilities and approved by the [Convention Center Authority].... (R.R. at 315a.)

Section 2.05(b) of the Indenture, drafted to meet the above requirement, specifies that:

[o]n or before the Tax–Exempt Conversion Date, the [Convention Center Authority] shall cause to be delivered to the Trustee *(1) complete plans and specifications* with respect to layout, design, land area, and all other matters with respect to the Convention Center; *(2) a project budget which shall include a detailed itemization* of all construction costs to be incurred in connection with the Convention Center, including (without limitation) all architectural, engineering and consulting fees, and a detailed itemization of all non-construction costs to be incurred by the [Convention Center Authority] in connection therewith.... (R.R. at 363a).

Defendants assert Indenture Section 2.05(b) fails to meet Ordinance Section 7(b)'s requirements for three reasons. First, the Indenture does not require the Convention Center Authority to prove it has "sufficient funds" to complete construction of the entire project before bond proceeds are released. Second, the Indenture does not require the Convention Center Authority to "certify" anything regarding its budget. And third, due to different "timing requirements" in Ordinance 73 and the Indenture, the terms of the Indenture create a risk that the Convention Center Authority may have a balanced budget when it markets the tax-exempt bonds, but not when it requests disbursement of funds from the construction account.

Convention Center Authority and Developer respond that Defendants' arguments are easily refuted by the plain language of

the Indenture and the unequivocal testimony of the documents' drafters. As they point out, Ordinance 73, § 5 authorized the Chair or Vice–Chair of the Board of Commissioners to execute the Guaranty in such form as the County's special counsel, Attorney Rauch, may advise. *See* R.R. at 314a. Further, Section 3.17(2) of the Guaranty states the Guaranty shall not be effective until the County approves the Indenture. *See* R.R. at 77a. As discussed below, Attorney Rauch testified Section 2.05(b) of the Indenture met the conditions of Ordinance 73, § 7(b).

### 1. Sufficient Funds

■ Defendants assert the chancellor erred by equating the Indenture's requirement (delivery of a Convention Center Authority "project budget" with a detailed itemization of all costs) with the Ordinance requirement (certification that the Convention Center Authority has "sufficient funds" to complete construction of the facilities). In particular, Defendants argue there is a distinction between a "budget," which is merely an aspirational document reflecting fiscal objectives, and a certification that sufficient funds to complete the entire project are available. Defendants further assert there is no statute or other legal requirement that the Convention Center Authority's Project budget be a balanced budget.

However, as the chancellor noted, Attorney Rauch, the County's bond counsel who reviewed Attorney Edelman's draft of Section 2.05(b) before the Indenture was executed, testified the Indenture affords the County greater protection than required by the Ordinance. Attorney Rauch emphasized the Indenture requires the Conven-

tion Center Authority to deliver the actual plans and specifications for the project, and a detailed, balanced budget. R.R. at 659a. Actual physical delivery provides Trustee the opportunity to determine for itself whether Convention Center Authority met its balanced budget requirement. *Id.* Conversely, certification merely requires a member of the Convention Center Authority to sign a document. *Id.*

Attorney Rauch further testified the term "project budget" can only mean a "balanced budget" detailing revenues and expenses. *Id.* at 659–60. He also noted Trustee's fiduciary duty to the bondholders to review the Convention Center Authority's budget before releasing the bond proceeds. *Id.* at 660.

In addition, Attorney Edelman testified Attorney Rauch contacted him about the Ordinance requirements. R.R. at 500a. Attorney Edelman then added Section 2.05(b) to the Indenture, which requires the Convention Center Authority to provide Trustee with evidence of sufficient funds to complete the project. *Id.* at 501a–02a. Moreover, he testified a balanced budget is essential in order to obtain the necessary credit enhancement needed to remarket the bonds. *Id.* at 502a. In other words, Attorney Edelman testified that in order to market the tax-exempt bonds, the term "project budget" could only mean a balanced budget. *Id.*

Therefore, although the Indenture does not define the terms "budget" or "project budget," the chancellor, citing the testimony of Attorneys Rauch and Edelman, and Authority's Financial Advisor,[11] concluded "budget meant balanced budget." Chancellor's Permanent Inj. Op. at 7. In interpreting the Indenture, the chancellor not-

---

11. Authority's Financial Advisor testified everyone in the working group (Convention Center Authority, Developer and County) understood that the Convention Center Authori-

ty's possession of sufficient funds to complete the project would be an Indenture requirement. *Id.* at 514a.

ed, Pennsylvania law dictates that business and technical terms are to be construed in accord with the general usage and custom of the trade. *Id.* (citing *Dep't of Transp. v. L.C. Anderson & Sons, Inc.,* 69 Pa. Cmwlth. 601, 452 A.2d 105 (1982)). The chancellor thus held Section 2.05(b) of the Indenture complies with Ordinance 73, § 7(b).

We agree. Despite Attorney Rauch's admission on cross-examination that the Convention Center Authority is not statutorily required to have a balanced budget, Indenture Section 2.05(b) requires the submission of a balanced budget. Both Attorneys Rauch and Edelman testified to this fact. Further, as Attorney Edelman explained, a balanced budget is essential to remarketing the tax-exempt 2003 bonds; an unbalanced budget would be unacceptable to Trustee and creditors/bondholders.

Consequently, we discern no error in the chancellor's determination on this issue.

### 2. Certification

■ In a similar attack on the language of the Indenture, Defendants assert Ordinance 73, § 7(b) specifies that as a condition to the release of bond proceeds, the Convention Center Authority must "certify" in writing the information provided is accurate. However, Defendants claim Section 2.05(b) of the Indenture does not require the Convention Center Authority to certify anything concerning its budget. Thus, Defendants again argue the Indenture fails to comply with Ordinance 73, § 7(b).

In support of its position, Defendants cite Attorney Rauch's testimony on cross-examination that certification is usually something written and signed. *See* R.R. at 663a. Attorney Rauch further stated the Indenture does not call for certification, but physical evidence of what would be certified. *Id.*

Because the Indenture does not require the Convention Center Authority to certify the accuracy of information in its budget, Defendants contend there is a material omission of an important tax protection in Ordinance 73, § 7(b). They maintain there is a significant difference between a budget identifying anticipated costs and written certification that sufficient funds are available to complete construction of the project.

The chancellor rejected this argument. Noting neither Ordinance 73 nor the Indenture defines the terms "deliver" or "certify," the chancellor cited the dictionary definition of "certify." [12] Viewing the Ordinance and the Indenture in their entireties, the chancellor determined both documents required the Convention Center Authority to provide Trustee assurance the Convention Center Authority has sufficient funds to complete the entire project as a condition to release of bond proceeds. Chancellor's Permanent Inj. Op. at 8. The chancellor again noted Attorney Rauch approved the final draft of Indenture Section 2.05 as complying with the Ordinance. *Id.*

We agree with the chancellor. Attorney Rauch testified the Indenture requires the Convention Center Authority to deliver to Trustee actual plans and specifications for the project, and an itemized balanced budget showing revenues and expenses. R.R. at 659a–60a. This permits Trustee to review these documents before releasing the bond funds for construction. *Id.* at 660a.

12. "Certify" is defined by Merriam Webster's Collegiate Dictionary 203 (11th ed.2004) as follows:

> **1:** to attest authoritatively; as **a:** CONFIRM **b:** to present in formal communication **c:** to attest as being true or as represented or as meeting a standard ... **2** to inform with certainty: ASSURE....

As a result, the "delivery" requirement provides greater taxpayer protection than the requirement that a member of the Convention Center Authority sign a certification that there is a balanced budget. *Id.*

Consequently, although the term "certified" in Ordinance Section 7(b) is not exactly "mirrored" in Indenture Section 2.05(b), the "delivery" requirement actually provides greater taxpayer protection than required by Ordinance. R.R. at 659a–60a. Defendants' argument to the contrary lacks merit.

### 3. Timing Gap; Risk of Unbalanced Budget

 Defendants assert different timing requirements between Ordinance 73, § 7(b) and Indenture Section 2.05(b) create a risk that the Ordinance prohibits. More precisely, Defendants assert the Ordinance requires the Convention Center Authority to certify it has sufficient funds to complete construction of the project *at the time the Convention Center Authority requests Trustee to disburse funds for construction.* In contrast, Indenture Section 2.05(b) requires the Convention Center Authority to provide Trustee with an itemized budget *on or before the "Tax Exempt Conversion Date," the date the Convention Center Authority remarkets the 2003 Bonds.* However, the Convention Center Authority need not request disbursement of construction funds on that date. *See* Section 5.02(c) of the Indenture; R.R. at 388a.

Essentially, Defendants argue the Convention Center Authority may hypothetically sell the 2003 Bonds before it requests disbursement from the construction fund.

As a result, a substantial gap in time may exist between the date of the bond sale and the date the Convention Center Authority requests money for construction. During that gap, a number of factors could create imbalance in the Convention Center Authority's budget. Given the timing gap between the Ordinance and the Indenture, the Convention Center Authority cannot certify it has sufficient funds to complete the project. They contend, therefore, the Indenture does not meet the requirements of the Ordinance.

At the permanent injunction hearing, the chancellor noted this hypothetical scenario was based entirely upon speculation. R.R. at 667a. Moreover, Attorney Rauch testified this scenario is very unlikely to occur. *Id.* Rather, Attorney Rauch testified, based on "the way these transactions work," the bond conversion and the Convention Center Authority's request for funds will occur on the same day. *Id.* at 667a–70a.

Although the chancellor did not explicitly address this issue in his opinion, we discern no merit in it. As the chancellor observed at the hearing, Defendants' hypothetical "gap" scenario is based entirely on speculation of events Attorney Rauch testified will not occur.[13]

### D. Modification of Indenture

 In their final argument, Defendants assert the Convention Center Authority's revised financing plan calls for the sale of the Additional Bonds constitutes an amendment to the Indenture increasing the County's Guaranty obligation. The additional Bonds are to be paid in

---

**13.** In connection with its arguments the Indenture does not comply with Ordinance 73, § 7(b)'s conditions, Defendants present two arguments why the permanent injunction may not be upheld on the alternative grounds that the County is estopped, or time barred under the Local Government Unit Debt Act from challenging the Guaranty. Having determined the chancellor did not err in holding Indenture Section 2.05(b) complies with the Ordinance and that the Guaranty is otherwise valid, we need not address these arguments.

parity with the debt service on the $40,000,000 in existing 2003 Bonds. Defendants therefore claim the County must consent by ordinance to the modification of the Indenture. In support, Defendants cite Section 4.01 of the Guaranty, which provides:

*Increased Obligations of County; Amendment.* No amendment, change modification, alteration or termination of the Indenture shall be effective which would in any way increase obligations of the County under this Guaranty Agreement, without obtaining the prior written consent of the County (such consent to be given by the County pursuant to an ordinance duly enacted by the Board of Commissioners). No amendment, change, modification, alteration or termination of the County's obligations hereunder shall be effective without the Trustee's consent if the effect of such amendment, change, modification, alteration or termination is to impair the security of the Note by changing the coverage of the County's guaranty obligation. (R.R. at 77a–78a.)

Defendants argue that the Convention Center Authority's obligation to pay the debt service on the guaranteed 2003 Bonds "in parity" with the debt service on the Additional Bonds will escalate the risk of County liability under the Guaranty. In order to avoid a default on the 2003 Bonds, the Convention Center Authority will have to make higher annual payments due to the combined debt service. Defendants maintain this modification to the Indenture increases the County's obligation under the Guaranty.

The broad language in Section 4.01 of the Guaranty, Defendants maintain, requires County consent for any change in

the Indenture that "in any way" increases the County's obligation under the Guaranty, not just changes that increase the amount of the County's obligation. In other words, an increase in risk constitutes an increased obligation triggering Section 4.01. Defendants thus assert the planned issuance of Additional Bonds requires County consent under Section 4.01.

Because the Convention Center Authority did not seek the County's consent to amend the Indenture, the Guaranty is allegedly no longer valid. As a result, the Convention Center Authority has no clear right to relief to enjoin the County from enforcement of Resolutions 36 and 37.

In rejecting this argument, the chancellor observed the Additional Bonds will not be guaranteed by the County and thus the proposed sale of Additional Bonds will in no way increase the County's obligations under the Guaranty. As a consequence, Section 4.01 of the Guaranty is inapplicable.

The Convention Center Authority contends the chancellor's determination is amply supported by the record. It cites its Financial Advisor's testimony that the County's obligation will not increase because "the debt service coverage ratio" or the amount of debt service relative to the projected revenue to pay it, is materially the same as it was in 2003 regardless of the increase in amount of total debt service. R.R. at 695a–98a, 703a–04a. In other words, the Convention Center Authority's ability to repay the debt service remains as favorable as it was when the Guaranty was executed. *Id.* In addition, Authority's Financial Advisor testified he was "very confident" the hotel room rental tax revenues will be enough to pay the total debt service.[14] *Id.* at 701a.

---

**14.** Also, Developer asserts Section 9.07 of the Indenture provides County consent is needed only for amendments or supplements to Sections 2.05(b), 5.02(c) or 5.08 of the Indenture.

We agree with the chancellor that the Convention Center Authority's planned sale of the Additional Bonds does not increase the County's obligation as defined by the Guaranty.[15] The County's obligation will not change because the Guaranty will not apply to the Additional Bonds.

Moreover, the record does not support Defendants' allegation that the Convention Center Authority's increase in total debt service escalates the likelihood the Guaranty will be called. Authority's Financial Advisor testified he was very confident the hotel room rental tax revenues will be sufficient to pay the Convention Center Authority's increased debt service. R.R. at 701a. In any event, we do not construe such a risk as an increase in or change in coverage of the County's obligation under the Guaranty.

## IV. Conclusion

In view of the foregoing, we hold the chancellor did not err in determining Plaintiffs established the requirements for a permanent injunction. First and foremost, Plaintiffs established a clear right to relief inasmuch as the Guaranty is legal and binding on the County. In issuing the Guaranty, the predecessor Board of Commissioners performed a proprietary function binding on its successor Boards. Additionally, the General Assembly's policy favoring predictability, stability and certainty in bond matters for county convention center authorities must prevail over common law policy concerns.

Second, the record supports the chancellor's determination that Indenture Section 2.05(b) complies with Ordinance 73, § 7(b). Attorney Rauch testified he reviewed Attorney Edelman's draft of Indenture Section 2.05(b) and approved it before the Guaranty was executed.

Third, the Convention Center Authority's issuance of the Additional Bonds did not require the County's consent under the Guaranty. The Guaranty does not apply to the Additional Bonds. Further, although the Convention Center Authority will use the hotel room rental tax revenues to pay debt service on the 2003 Bonds in parity with the debt service on the Additional Bonds, this does not constitute an increase in the County's obligation under the Guaranty.

Finally, although they were not challenged by the County, the chancellor's determinations that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested, are supported by the record. Without an injunction, the Convention Center Authority will not be able to remarket the 2003 Bonds and the Convention Center project will fail. Further, the grant of the injunction is not likely to harm the County; the County Treasurer and the Authority's Fi-

See R.R. at 426a. None of those provisions were amended, supplemented or modified. Rather, only Section 6.03, titled "Limitations on Creation of Liens," must be amended. Section 6.03 provides, "[Convention Center Authority] agrees that it will not create or suffer to be created or permit the existence of any Lien upon the Hotel Tax Revenues." *Id.* at 400a.

**15.** The Guaranty defines "County Obligation" as follows:

"*County Obligation*" shall mean, to the extent the Authority has failed to provide necessary funding as required by the Note, the County's obligation to replenish a portion of the Debt Service Reserve Fund in order to maintain the appropriate Required Reserve Amount, but not to exceed the lesser of $1,506,960.00 or fifty percent (50%) of the Required Reserve Amount in any fiscal year. (R.R. at 70a.)

nancial Advisor testified the hotel room tax revenues will cover the debt service on both the 2003 Bonds and Additional Bonds.

For these reasons, we discern no error in the chancellor's grant of the permanent injunction. Accordingly, we affirm.

Judge PELLEGRINI concurs in the result only.

### ORDER

AND NOW, this 13th day of November, 2007, the order of the Court of Common Pleas of Lancaster County is **AFFIRMED.**