MacCalman, Appellant, *v.* Bucks County.

Argued March 22, 1963. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Roland E. Sykes,* for appellants.

*John O. Karns,* with him *John W. Dean, III,* and
*Ballard, Spahr, Andrews & Ingersoll,* for appellee.

OPINION PER CURIAM, June 5, 1963:

In January 1962, as the result of comprehensive
studies and reports made by independent groups which
*clearly* indicated that in certain areas of Bucks County

the public water and sewage facilities were wholly inadequate to meet both the present and the future anticipated needs of such areas, the County Commissioners of Bucks County (County) created the Bucks County Water and Sewage Authority (Authority).

"As one of its undertakings, the Authority has proposed the 'Neshaminy Sewer Project' . . ., whereby [the Authority] would provide and operate a trunk interceptor sewer line and furnish sewage treatment and disposal facilities, designed to serve those portions of nine local municipalities within the county (five second class townships, and four boroughs) which lie topographically within the lower Neshaminy Creek watershed south or southeast of Newtown Township."[1] The Authority under its plan would *construct* this interceptor sewer line,[2] would *maintain* it and would provide for the proper *treatment* and *disposal* of the sewage; the Authority would enter into agreements with the several municipalities under which agreements the municipalities would *construct* sewage collection sewers, would *connect* their sewers to the Authority's interceptor sewer line and would *pay* to the Authority a proportionate (based on users) share of the annual operating expenses and sewage facilities amortization expenses of the Authority.

Aware that the local municipalities were unable financially to provide the necessary facilities themselves, that proper planning required the construction of regional facilities with sufficient capacity to meet the present and future needs of the area, that the costs of such would exceed the present ability of the municipalities to support the same, that it would be entirely unfeasible for each municipality to solve its problems

---

[1] From the opinion of the court below.

[2] This interceptor sewer line would be approximately 13½ miles in length and extend from Fergusonville to Newport Township, all in Bucks County.

alone or on a piece-meal basis, that the County as a whole, as well as the municipalities involved, would benefit from the project and that the health of this particular area might well be seriously threatened and affected unless appropriate sewer facilities and adequate disposal and treatment of sewage were *presently* furnished,[3] the County on November 20, 1962, by appropriate resolution, approved a so-called Service Agreement, expressed its intent both to execute such agreement and to commit itself to make certain annual appropriations from county funds for the project and requested the controller of the County to make provision for such annual appropriations in the next county budget. Under this so-called Service Agreement, the County, in order to make the project for the municipalities economically feasible, sets forth its willingness to aid the municipalities in providing sewers and sewer treatment services until such time as the number of connections in the municipalities' collections systems has increased sufficiently to make such county aid unnecessary and to this end will provide county funds intended to be sufficient to maintain the rates of the Authority to the municipalities at not more than a certain number of dollars per equivalent residential unit. In line with that purpose, the County, under the Service Agreement, for each fiscal year will determine in advance the amount which the Authority will require during each fiscal year to meet all of its obligations under the Neshaminy Sewer Project and the amount of the Authority's revenues and other monies which might be available to meet the obligations of the Authority for the project "assuming the Authority's equivalent residential unit rate at the above amount"; the County will then include in its annual budget an amount equal to the difference between the latter and

---

[3] As found by the court below on the basis of stipulations of the parties and testimony taken.

former amounts and *from current revenues* will appropriate such amount to the municipalities to be allocated in the proportion that the number of residential equivalent unit connections to the collection systems in each municipality bears to the total of all connections of all the municipalities. The Service Agreement provides for an agreement by the municipalities that any and all County appropriations shall be paid *directly* to the Authority and for the purpose of such payments the municipalities will designate the Authority as their agent. By resolution, the County has expressed its intent to approve such appropriations which do not exceed, on the average, $120,000 per year over a ten year period.

Duncan I. MacCalman and Barbara MacCalman, his wife, as property owners, residents and taxpayers of the County, instituted an action in equity in the Court of Common Pleas of Bucks County against the County, its commissioners and the Authority seeking to enjoin the County and its commissioners (a) from entering into the Service Agreement or making any appropriations thereunder and (b) from approving payments to be made from county funds under said agreement and to enjoin the Authority from expending any monies paid by the County under said agreement.

The matter came before the court on the complaint, defendants' joint answer admitting all the factual averments of the complaint, a stipulation of facts by the parties and certain evidence taken at a hearing before the court. The final decree of the court dismissed the complaint and entered judgment in favor of the County and Authority and against MacCalmans and from that decree this appeal is taken.

MacCalmans do not dispute the present necessity for the project or its vital importance to the health, present and future, of the area but simply attack the authority of the County to enter into the agreement

on purely legal, rather than factual, grounds. Mac-Calmans' contentions are three-fold: (1) that a third class county cannot lawfully make appropriations "to" a municipality within the county, but *payable* to a municipality Authority formed by the county, and to be applied by such Authority toward the amortization of the costs of the sewage facilities owned by the Authority and the sewage treatment costs, thus reducing the Authority's charges to the municipality for the use of the Authority's facilities; (2) if the County can make such appropriations, the present county commissioners cannot bind their successors in office to make such appropriations in future years; (3) if they can, the action of the present commissioners *constitutes* an unlawful incurring of indebtedness by the County to the extent of the total maximum appropriations which The County is committed to make.

The court below took the position: (1) that the County did have the legal authority to appropriate its funds to the Authority for the purposes and in the manner contemplated, said authority being §§2101 and 2132 of The County Code of August 9, 1955, P.L. 323, 16 PS §§2101, 2132; (2) that if the Service Agreement is "deemed to constitute a contractual impairment or limitation upon future county commissioners in a *legislative or governmental* function, then we [the court below] believe that considerations of urgency and necessity, especially when coupled with the stipulated public interest and absence of bad faith or ulterior motivation, should permit the commitment to be sustained as an exception to the general rule", i.e., that a legislative body, or municipal board having legislative authority, may not properly bind its successors and may not legally enter into a contract which will extend beyond the term for which the members of the body were elected; (3) that, if the commitment by the County be considered *proprietary*, rather than *legislative* or *gov-*

*ernmental,* in character, the County has the power through its commissioners to make obligations extending beyond the tenure of office of the present commissioners; (4) that the commitment by the County for annual appropriations under the Service Agreement does not constitute the incurring of an indebtedness by the County because such appropriations are expressly payable out of "current revenues".

From our examination of the record and the applicable law we are satisfied that the County has the legal authority under the instant factual situation to enter into this Service Agreement and to make the appropriations provided thereunder and that the court below properly dismissed MacCalmans' complaint.

Decree affirmed. Each party to pay own costs.

Mr. Justice ROBERTS dissents.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

In Pennsylvania it is hornbook law that courts do not render advisory opinions. Yet that is exactly what the majority does in this case.

The complaint in equity alleges only that the commissioners by resolution "have expressed their intention" to execute service agreements and "have expressed their intention" to make appropriations in accordance therewith. The agreements have not been executed; the appropriations have not been made. No harm will result if plaintiff-appellant postpones this lawsuit until the agreements and appropriations are made, thus assuring us that we are deciding an actual controversy or an accrued cause of action.

I know of no authority by which a taxpayer can enjoin a "legislative intention." Accordingly, I must dissent and disassociate myself from the majority's observations which apparently are made for the benefit of counsel who must approve the bond issues.