**T.H. PROPERTIES, L.P.**

v.

**UPPER SALFORD TOWNSHIP BOARD OF SUPERVISORS,**
Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 11, 2008.

Decided Feb. 11, 2009.

Reargument En Banc Denied
April 3, 2009.

Ordered Published May 1, 2009.

Catherine M. Harper, Fort Washington, for appellant, Upper Salford Township Board of Supervisors.

J. Edmund Mullin, Lansdale, for appellee, T.H. Properties, L.P.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The Upper Salford Township Board of Supervisors (Board) appeals from the order of the Court of Common Pleas of Montgomery County approving a stipulated settlement between the prior Board, referred to as a "lame duck" Board, and T.H. Properties, L.P. (Developer) in a pending land use appeal. The Board argues that the previous Board could not bind its successor by entering into a comprehensive zoning agreement at the end of its term. The Board also argues that the settlement was void due to a conflict of interest in one of the Supervisors and that the trial court lacked sufficient information to approve the settlement.

On January 4, 2002, Developer filed its application under the Upper Salford Township (Township) Zoning Ordinance 99–1 for a conditional use under specific sections to develop a 312–acre parcel with 185 single-family detached homes and an 18–hole golf course (Subdivision Plan). After 23 hearings between February 2002 and October 2004, the Board issued a 123–page decision in June 2005 (with 684 findings) denying the application, and Developer appealed to the trial court. At the time the Board consisted of Supervisors Kenneth Hagey (Hagey) (chairman), Theodore F. Poatsy, Jr. (Poatsy) and Rudolph D. Gular (Gular).

In November 2005 the Township authorized one of its Supervisors and the Township's Solicitor to engage in settlement negotiations with Developer, which continued for the next two years. Gular was defeated in the November 2007 municipal

election by Kevin O'Donnell (O'Donnell), who opposed the Subdivision Plan. At a public meeting held after the election but before O'Donnell took office, the Township approved a proposed settlement with Developer.[1] Hagey and Gular voted in favor of settlement, and Poatsy opposed it. On December 10, 2007, the Township and Developer entered into a Stipulation and Agreement (Agreement), which the trial court approved by order dated December 13, 2007.

When O'Donnell took office at the January 7, 2008 reorganization meeting, the new Board rescinded the authorization granted in November 2005 for settlement negotiations to commence with Developer, and it hired special counsel to disavow the Agreement. The Board appealed to the trial court on January 9, 2008, and in its concise statement of matters complained of on appeal the Board asserted that the Agreement could not bind the new Board with respect to its performance of a governmental function and that approval of the Agreement was void because Gular had an undisclosed conflict of interest with Developer. The Board also contended that the trial court had no basis for its approval because the record was never filed with the trial court.

■ The trial court issued an opinion holding that the Board's claims of error were based on evidence not of record and were therefore waived pursuant to Pa. R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). The trial court explained that it had reviewed the lengthy Agreement with extensive exhibits, which included the stipulated plan,

general lot designs, conditional use approvals and waivers under the Township's Subdivision and Land Development Ordinance 2000–4 (SALDO). It cited *Boeing Co. v. Zoning Hearing Board of Ridley Township,* 822 A.2d 153 (Pa.Cmwlth.2003), for the rule that court-approved settlements of zoning cases are favored.[2]

The Pennsylvania Supreme Court recognized in *Lobolito v. North Pocono School District,* 562 Pa. 380, 755 A.2d 1287 (2000), that a newly-elected governing body should be able to act in the public's interest without being "hamstrung" by the agreements and policies of its predecessors. The case involved a contract between an outgoing school board and a developer for the construction and operation of a sewage treatment plant to serve a proposed new school building. The successor board repudiated the contract and refused to build the school. The Supreme Court held that making the decision to construct a public school was a governmental function, and thus the previous board could not bind its successor to that obligation. It also expressed particular concern about enforcing an agreement made "after an election but before the newly-elected board members took office." *Id.* at 389, 755 A.2d at 1291.

■ In its main argument, the Board urges the Court to follow *Lobolito* and to invalidate the Agreement because it encompasses zoning, which is a core governmental function. The determination of whether a function is governmental involves a consideration of whether the governing body is required by statute to perform the function, whether the act could

---

1. The Board claims that the settlement was not on the agenda for the meeting and that the vote occurred at 12:30 a.m. on November 21, 2007, which was Thanksgiving morning.

2. The Court reviews a trial court's acceptance or rejection of a settlement proposal for abuse of discretion. *Treasurer of the State of Connecticut v. Ballard Spahr Andrews & Ingersoll LLP,* 866 A.2d 479 (Pa.Cmwlth.2005).

also be performed by a private entity and whether the activity is used to raise revenue. *See Boyle v. Municipal Authority of Westmoreland County,* 796 A.2d 389 (Pa. Cmwlth.2002). The Board argues that the legislative intent expressed in the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10105, is for municipal governments to guide land uses. Section 603(c)(2) vests the governing body of a township with authority to grant conditional uses. 53 P.S. § 10603(c)(2).

The Agreement outlines a comprehensive scheme for approval of the Subdivision Plan. It includes, *inter alia,* Developer utilizing its general conceptual layout design for the 175 residential lots, commercial golf course with accessory structures and general road configuration; waivers of certain SALDO provisions; authorization for the Township to waive compliance with other provisions without comment from the Township Planning Commission; relief from Zoning Ordinance provisions; ability to proceed under a modified plan not requiring zoning relief if such is not granted without review of the plan; a schedule of time limits for the Township's review and response to plans; a $3,000,000 cash or equivalent "in-kind" contribution to the Township and a $50,000 contribution to its Volunteer Fire Company upon final plan approval; provisions for expanding the Township's sewage treatment plant; and permission for Developer to construct wells to supply water to the golf course without being taxed or charged for their use, operation or management.

The Agreement also included an interpretation of specific provisions of the Zoning Ordinance intended for purposes of settling the litigation between the parties. They agreed upon the interpretation of Sections 602.B.1 and 702.B.1 (site density); 602.B.2, 3 and 702.B.2, 3 and 2206.A.4, 5 and 2207.G.2 (permitted accessory uses in greenway lands); 1802.A, B and 1803 (permitted crossings over riparian corridors); and 1807 (required restoration of riparian corridors).

The Board argues that the Agreement covers functions reserved either for the Board of Supervisors or for the Zoning Board by the MPC that cannot be performed by any private entities. Moreover, in *Program Administration Services, Inc. v. Dauphin County General Authority,* 593 Pa. 184, 928 A.2d 1013 (2007), the Supreme Court explained that the governmental functions analysis evolved from courts responding to bad faith efforts by "lame duck" governing bodies to bind their successors. The Board cites *Program Administration Services, Inc.* as well as *State Street Bank & Trust Co. v. Department of Treasury,* 712 A.2d 811 (Pa.Cmwlth.1998) (holding that custodial and securities lending agreements between state treasury department and bank involved governmental powers of the Treasurer and could not bind successors) and *Falls Township v. McManamon,* 113 Pa.Cmwlth. 504, 537 A.2d 946 (1988) (holding that long-term contract between police chief and outgoing supervisors was invalid). Citation to these cases was intended to show that courts have consistently invalidated last-minute attempts by outgoing public officials to influence the governmental functions of subsequent governing bodies.

Developer counters that the cases cited by the Board do not apply because they involved long-term contracts rather than court-approved settlements. It asserts that the decisive event here does not constitute a governmental function of the Board but rather settlement of a land use appeal. Developer refers to *Summit Township Taxpayers Association v. Summit Township Board of Supervisors,* 49 Pa.Cmwlth. 459, 411 A.2d 1263 (1980),

where a taxpayers' association appealed a court-approved settlement of a zoning appeal on the grounds that it was, in effect, either a zoning ordinance amendment or the grant of a variance. This Court rejected that argument, noting: "[W]e must recognize such settlements as being distinct from zoning hearing board variances; even though a judicial settlement may result in a departure from the ordained zoning pattern, that kind of departure falls within the court's jurisdiction, not the board's jurisdiction." *Id.* at 1266. Developer maintains that if court-approved settlements could be overturned by the successor board, then no settlement would ever become final. Alternatively, if the Agreement were the decisive matter it would pass the governmental functions test in *Boyle.*

Developer disputes the notion that the settlement represented a bad-faith attempt by an outgoing board to "hamstring" its successor. It states that Gular was the only Supervisor who was defeated and that the Board cites no authority to support the view that Gular could not continue to act in his official capacity until the end of his term. In addition, the settlement negotiations lasted for two years, and neither O'Donnell nor any other resident sought to intervene in the land use appeal despite the procedures for intervention provided for in Section 1004–A of the MPC [3] and the Pennsylvania Rules of Civil Procedure. Hence, the new Board is attempting to collaterally attack the settlement, and as this Court held in *Summit Township* and

in *Boeing,* such attacks will not be entertained absent extraordinary circumstances when brought by parties who failed to avail themselves of the proper procedures for intervention.

■ The Court agrees that O'Donnell or any other objecting party should have moved to intervene in the land use appeal before the entry of the trial court's December 2007 order approving the Agreement, which resulted from two years of obviously extensive negotiations. The MPC permits intervention within the first 30 days after the filing of a land use appeal by a municipality or the owner of any property directly involved or by any others pursuant to Pennsylvania Rules of Civil Procedure. 53 P.S. § 11004–A. Petitions to intervene are governed by Rules 2326–2350. Rule 2327 lists categories of persons permitted to intervene, and it includes any person with a "legally enforceable interest."

■ In *Summit Township* this Court recognized that "[o]wners of property in the immediate vicinity of property involved in zoning litigation have the requisite interest and status to become intervenors under Pa. R.C.P. 2327(4)." *Summit Township,* 411 A.2d at 1265. Allowance of intervention is mandatory for such persons unless the court has grounds for the denial of intervention under Rule 2329.[4] *Larock v. Sugarloaf Township Zoning Hearing Board,* 740 A.2d 308 (Pa.Cmwlth.1999). Because the law favors settlements of lawsuits, parties who fail to intervene timely will not be permitted to collaterally attack

---

**3.** Act of July 31, 1968, P.L. 805, *as amended,* added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11004–A.

**4.** Rule 2329 permits a court to refuse intervention if:
(1) the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or

(2) the interest of the petitioner is already adequately represented; or
(3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties.

a settlement absent a showing of extraordinary circumstances to support doing so. *Township of Radnor v. Radnor Recreational, LLC,* 859 A.2d 1 (Pa.Cmwlth. 2004).

There is no doubt that O'Donnell was aware of the pending appeal involving the Subdivision Plan. The Board emphasizes that this matter was one of O'Donnell's campaign issues. Consequently, he or other interested residents could have petitioned to intervene when the land use appeal was filed or when the Board authorized settlement negotiations. In *Boeing* the Court indicated that in *Summit Township* the "decisive event" for purposes of review was the settlement of a judicial proceeding under court supervision as opposed to the review of action by the board. It concluded that "[i]n accordance with *Summit,* review of the issues arising during the process leading to a court order are appropriately addressed to the court overseeing the case's resolution. . . ." *Id.,* 822 A.2d at 162. The Court rejected Boeing's attempt to overturn settlements reached under court supervision.

 In the case *sub judice,* no objections to the approved settlement were raised before the trial court because no objector intervened, including O'Donnell. As a consequence, the time for raising objections to the Agreement is over. *See Boeing; Summit Township.* The Board has failed to show that the trial court abused its discretion in approving the

Agreement, and its order therefore is affirmed.[5]

### *ORDER*

AND NOW, this 11th day of February, 2009, the order of the Court of Common Pleas of Montgomery County is affirmed.

---

**5.** The Board also claimed that the approval of the Agreement was void due to an alleged undisclosed conflict of interest on the part of Gular in violation of the Ethics Act, 65 Pa. C.S. § 1103(j). Developer correctly notes that this issue was never presented to the trial court and therefore is waived pursuant to Pa. R.A.P. 302(a). Even if the issue was not waived, the Ethics Act does not authorize the voiding of a public official's vote as one of the penalties for a violation. *Yaracs v. Summit Academy,* 845 A.2d 203 (Pa.Cmwlth.2004). Furthermore, the Court rejects the Board's argument that the trial court lacked sufficient information to approve the Agreement when the trial court clearly reviewed not only the lengthy Agreement but also the stipulated plan, general lot designs, conditional use approvals and the SALDO waivers.