**Shenango Presbyterian Seniorcare v. Lawrence County Board of Assessment Appeals**

422

*Michael Yukevich, Jr.* and *Chadd C. Colin*, for plaintiff/petitioner.

*Thomas W. Leslie*, for defendant Lawrence County.

*John F. Salopek*, for defendants New Wilmington

Borough and Wilmington Area School District.

PICCIONE, *J.*, May 21, 2014—Before this court for disposition is the motion to enforce contribution in lieu of real estate taxes agreement of settlement (hereinafter, the "motion") filed on behalf of the plaintiff/pettitioner, Shenango Presbyterian Seniorcare, a Pennsylvania non-profit corporation (hereinafter, the "petitioner"). On October 31, 2013, the petitioner filed the motion, wherein it requests this court enjoin the defendants/petitioners, Lawrence County Board of Assessment and Appeals, Wilmington Area School District, New Wilmington Borough and Lawrence County (hereinafter, collectively, the "respondents"), from terminating or declaring ineffective the agreement entitled "Contribution in Lieu of Real Estate Taxes Agreement of Settlement," which the parties entered into on December 4, 2007. The Respondents argue that the agreement was entered into by a predecessor Lawrence County Board of Assessment Appeals and has since expired. For the reasoning set forth below, the petitioner's motion is denied.

The petitioner is a nonprofit organization located in New Wilmington, Lawrence County, Pennsylvania. Since its inception in 1968, the petitioner's facilities had never been subject to real estate taxes until 2002 when it acquired additional property to construct independent living facilities. In 2004, the respondent, Lawrence County Assessor's Office, gave notice that the new facilities were assessed for the payment of real estate taxes. The petitioner appealed this determination to the board of assessment appeals. Following a hearing on the matter, the board of assessment appeals denied the petitioner's challenge to the assessment of real estate taxes, and the petitioner filed a further appeal with this court.

Prior to a determination on appeal, effective January 30, 2007, the petitioner and the respondents entered into an agreement entitled Contribution in Lieu of Real Estate Taxes Agreement of Settlement (hereinafter, the "settlement agreement"), wherein the parties agreed, *inter alia*, that the petitioner's newly acquired property shall be tax exempt beginning in the year 2004 and shall remain in that classification for two years. The parties also agreed that at the expiration of the two-year term, the settlement agreement shall automatically renew for an additional two-year period unless there is a material change in the laws of the Commonwealth respecting real estate tax exemption. Pursuant to the settlement agreement, if a party wishes to terminate or renegotiate the settlement agreement following a material change in the law, the party is to provide notice six months prior to the termination of the current two-year term.

On June 28, 2013, six months prior to the termination of the then existing two-year term, the respondents notified the petitioner that as of December 31, 2013, it would be terminating the settlement agreement based upon a material change in the laws of the Commonwealth with respect to the petitioner's tax exempt status. On October 29, 2013, the parties appeared in motion court for the presentation of the instant Motion to Enforcement Contribution in Lieu of Real Estate Taxes Agreement of Settlement (hereinafter, the "motion"). This court scheduled oral argument on the motion for February 4, 2014. The court ordered parties to file briefs in support of their respective positions on the motion, an order with which the parties timely complied.

The petitioner asserts that there has been no material change in the laws of the Commonwealth with respect to its tax exempt status nor has there been a change in

the petitioner's use of the property at issue. Because of these facts, the petitioner argues that this court enforce the settlement agreement and order the respondents to comply with the terms thereof. Conversely, the respondents argue that this court should void the settlement agreement because it was entered into by their predecessors and cannot be binding over a subsequent governmental board. The respondents also assert that the petitioner's facility does not meet the constitutional standard of a purely public charity as set forth in the *HUP* test[1], formulated by the Pennsylvania Supreme Court in *Hospital Utilization Project v. Comm.*, 487 A.2d 1306 (Pa. 1985). The respondents argue that the settlement agreement appears to disregard the *HUP* test and to allow the petitioner to remain in operation, even as a purely profitable organization, and maintain its tax exempt status.

In order to reach the merits of the parties' arguments, the court must first determine whether the settlement agreement is binding and enforceable on successor boards. Instantly, in 2007, the settlement agreement was entered into by the petitioner and the then-acting members of the respondents boards and officers. As stated above, in paragraph 2 of the contract, the term of the settlement agreement will be two years from the date upon which it was executed and shall automatically renew for an additional two-year period at the expiration of each term period unless there has been a material change in the laws of the Commonwealth with respect to real estate tax exemption.

---

1. "Under the *HUP* test, a purely public charity must: (a) advance a charitable purpose; (b) donate or render gratuitously a substantial portion of its services; (c) benefit a substantial and indefinite class of persons who are legitimate subjects of charity; (d) relieves the government of some of its burden; and (e) operate entirely free from profit motive." *In re Appeal of Dunwoody Village*, 52 A.3d 408, 413 n.4 (Pa. Cmwlth. 2012).

As the settlement agreement is an agreement with a governmental body, it is viewed in a different light than agreements between private parties. In *Lobolito, Inc. v. North Pocono School Dist.*, 755 A.2d 1287, 1289 (Pa. 2000), the Pennsylvania Supreme Court reiterated, "With respect to those agreements involving municipal legislative bodies that encompass governmental functions, we have repeatedly held that governing bodies cannot bind their successors." (citing cases). Therefore, when a private entity contracts with a governmental body, the question of whether such contract may bind governmental successors falls upon the determination of whether the contract serves a governmental or a proprietary purpose. *Beaver Dam Outdoors Club v. Hazleton City Authority*, 944 A.2d 97, 110-111 (Pa. Cmwlth. 2008). If a contract serves a governmental purpose, the contract cannot bind governmental successors; however, if a contract serves a proprietary purpose, the contract can bind its successors. *Id.* In underlying the importance of the governmental-proprietary distinction, the Pennsylvania Supreme Court explained in *Mitchell v. Chester Housing Authority*, 132 A.2d 873, 878 (Pa. 1957), "The obvious purpose of the rule is to permit a newly appointed governmental body to function freely on behalf of the public and in response to the governmental power or body politic by which it was appointed or elected, unhampered by the policies of the predecessors who have since been replaced by the appointing or electing power."

"In determining whether activity is governmental or proprietary, the court will consider whether: (1) the activity is one that government is not statutorily required to perform; (2) the activity also may be carried on by private enterprise; or (3) the activity is used as a means of raising

revenue." *Municipal Authority of Borough of Edgeworth v. Borough of Ambridge Water Authority*, 936 A.2d 538, 548 (Pa. Cmwlth. 2007). "If the answer to any of these inquiries is yes, the function is proprietary." *Id.* The test to determine whether an activity qualifies as a governmental function is not as clear. The Pennsylvania Supreme Court has found the term "governmental function" to be ambiguous. *See SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1041 (Pa. 2012). The courts of this Commonwealth, pursuant to the rules of statutory construction, have defined a "governmental function" as an activity "performed for public purposes exclusively in its public, political or municipal character." *Boyle v. Municipal Authority of Westmoreland County*, 796 A.2d 389, 393 (Pa. Cmwlth. 2002). Additionally, in *SWB Yankees*, the court utilized Black's Law Dictionary to define a "governmental function." Black's provides the definition of the term to be "[a] government agency's conduct that is expressly or impliedly mandated or authorized by constitution, statute, or other law and that is carried out for the benefit of the general public." BLACK'S LAW DICTIONARY 716 (8th ed. 2004).

Instantly, the crux of settlement agreement involves the taxability of various parcels of property owned by the petitioner. The function of taxation undeniably falls within the category of a governmental, rather than a proprietary, function. The power of taxation lies solely within the general assembly, and the Constitution of Pennsylvania has enacted various limitations, including the exemption from taxation of purely public charitable institutions, on the power of taxation in Article VIII, Section 2. Therefore, because the settlement agreement involves the function of taxation, such agreement generally cannot be binding on

the current taxing authorities.

The petitioner does not dispute the fact that the settlement agreement involves a governmental function. Instead, the petitioner argues that it is an exception to the general rule that parties cannot bind successor governments by contracts involving governmental functions effectuated by their predecessors. The petitioner argues that the legislature specifically permits governments to make long-term agreements with private entities when it is necessary for the public good. After a review of the applicable case law, the court is unable to find authority permitting such a general exception.

"Our [Pennsylvania Supreme] Court has noted only one exception to the general rule against binding governmental successors." *Lobolito*, 755 A.2d at 1290. The court in *Lobolito* explained that, unless a statute permits governmental authorities to enter into long-term agreements with private entities, the only recognized exception pertains to situations in which "considerations of urgency and necessity, especially when coupled with the stipulated public interest and absence of bad faith or ulterior motivation should permit the commitment to be sustained[.]" *Id.* (citing *MacCalman v. County of Bucks*, 191 A.2d 265 (Pa. 1963)). Instantly, the circumstances surrounding the enforceability of the settlement agreement are not urgent or necessary for the public good. Predictably, neither the petitioner nor the respondents argue this point.

The petitioner argues that the legislative intent of the Chapter 10, Section 372 of the Pennsylvania Statutes, which or Act 55, provisions regarding purely public charity, authorize governmental boards to enter into long-term agreements with purely public charities. However,

the court finds this statute to be inapplicable under the current circumstances. Although the petitioner was indeed given tax exempt status in 1968, it has never been assessed and determined to be an institution of purely public charity under the constitutional *HUP* test. The case law makes clear that under these circumstances, in order to be given tax exempt status as an institution of purely public charity, an organization must first meet the constitutional standard for establishing the entity is a purely public charity. In *Mesivtah Eitz Chaim of Bobov, Inc. v. Pike County Board of Assessment Appeals*, 44 A.3d 3, 9 (Pa. 2012), the Pennsylvania Supreme Court explained that "to receive an exemption without violating the constitution, the party must meet the definition of 'purely public charity' as measured by the test in *HUP*. It if does so, it may qualify for an exemption if it meets the statute's requirements. Act 55, however, cannot excuse the constitutional minimum — if you do not qualify under the *HUP* test, you never get to the statute." Because the petitioner has never been assessed to be a purely public charity under the *HUP* test, the petitioner cannot argue that the provisions of Act 55 permit the respondents to honor a contract entered into by the predecessors that established the petitioner's tax exempt status. As a result, the respondents are not bound by the settlement agreement and may terminate it at their discretion. Based upon the foregoing, the petitioner's motion to enforce contribution in lieu of real estate taxes agreement of settlement is hereby denied.

## ORDER OF COURT

And now, this 21st day of May, 2014, this case being before the court on February 4, 2014 for a hearing regarding the plaintiff/petitioner's motion to enforce contribution in lieu of real estate taxes agreement of

settlement, with Michael Yukevich, Jr., Esquire, and Chadd C. Colin, Esquire, appearing and representing Shenango Presbyterian Seniorcare, with Thomas W. Leslie, Esquire, appearing and representing the Lawrence County Board of Assessment Appeals and with Lawrence County, and with John F. Salopek, Esquire, appearing and representing the Wilmington Area School District and the New Wilmington Borough, and upon consideration of said motion and the hearing thereon, the court hereby orders and decrees as follows:

1. The plaintiff/petitioner's motion to enforce contribution in lieu of real estate taxes agreement of settlement is hereby denied pursuant to the attached opinion.

2. The prothonotary shall properly serve notice of this order of court and attached opinion upon counsel of record; and if a party has no counsel, then upon said party at their last known address as contained in the court's file.