J-E02001-23

2023 PA Super 271

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE A/S/O BATES COLLISION, INC. JAMES MYERS, ANITA MORGAN, LOSSIE AUTO SERVICE, AND BENEDICTINE SISTERS OF ERIE, INC. | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : : | No. 1482 WDA 2021 |
| UNITED SERVICES AUTOMOBILE ASSOCIATION | : : : : : | |
| v. | : : : : | |
| BATES COLLISION, INC., | : | |

Appeal from the Judgment Entered November 12, 2021
In the Court of Common Pleas of Erie County Civil Division at No(s):  No. 12888-18

BEFORE:  PANELLA, P.J., OLSON, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., KING, J., and McCAFFERY, J.

OPINION BY DUBOW, J.:                    **FILED: December 21, 2023**

Erie Insurance Exchange ("Appellant") appeals from the order granting summary judgment to United Services Automobile Association ("Appellee") in its action seeking damages based on promissory estoppel.  We conclude that the trial court erred in granting summary judgment to Appellee after first erroneously recharacterizing Appellant's promissory estoppel claim as one based on negligent spoliation of evidence and then dismissing on the grounds

that Pennsylvania does not recognize negligent spoliation claims. Accordingly, we reverse the order granting summary judgment in favor of Appellee.

**A.**

On January 22, 2017, a fire occurred at Bates Collision's automotive collision repair shop in Wesleyville, Erie County, damaging the building and sixteen vehicles that were in the building. One of the vehicles was a 2013 BMW 3 Series 335i that Robert Bailey owned and Appellant insured. The BMW vehicle was the only vehicle in the building that sustained burn damage in the fire; the other vehicles sustained only smoke damage or smoke damage and damage from falling debris.

Appellant insured four of the other vehicles in the building and paid those insureds a total of $35,317 for the damage to their vehicles. Appellant also paid Bates Collision $1,587,000.10 for losses from the fire under two policies of insurance. Thus, as a result of the fire, Appellant paid a total of approximately $1,622,317 to its insureds.

Following its initial investigation, Appellant concluded that the BWM may have caused the fire and, on January 26, 2017, notified BMW of North America ("BMW") of a potential claim. On February 7, 2017, Appellant scheduled a joint inspection of the fire scene for February 22, 2017. Appellant's counsel included in a scheduling letter and a follow up email to both Appellee and BMW the statement that "[a]fter the inspection, [Appellee] will retain the BMW for possible future examination." Letter from Robert Gaul, Esq., 2/7/17; email from Gaul & Associates, 2/15/17.

On February 22, 2017, the experts for Appellant, BMW, and Appellee attended a joint inspection of the BMW. Appellee's expert advised Appellee that the BMW vehicle needed to be wrapped and held for future examination. Appellee then towed the BMW vehicle to Insurance Auto Auction ("IAA").

On February 23, 2017, Appellant emailed a letter to Appellee and its expert stating:

> This will confirm that USAA [Appellee] took possession of the BMW and will have it wrapped, secured and preserved for possible future examinations.
>
> Please provide the storage location for the BMW. We may want to conduct a future invasive examination of the vehicle and/or its components. Please make sure the car is preserved in its current condition and is not in any way altered or disturbed.

Letter from Robert Gaul, Esq., to Adam Mireliz and Lisa Breneman, 2/23/17.

Appellee responded the same day by letter stating:

> Please be advised, the 2013 BMW 335XI 4D 4X4 is located at:
> Insurance Auto Auction
> 49 Bairdford Rd
> Gibsonia, PA 15044
> 724-443-7881
> Stock number: 19311412
> We have requested that the vehicle be wrapped and preserved for potential additional investigation.

Letter from Frank Jurado to Gaul & Associates, 2/23/17.

On April 25, 2017, Appellant contacted Appellee and BMW to schedule an invasive examination of the BMW vehicle, requesting that it occur on June 30, 2017. The examination did not occur because IAA had sold the BMW vehicle at a salvage auction on March 28, 2017. IAA claimed that Appellee

USAA had not sufficiently communicated to IAA the need for IAA to put a "hold" on the BMW vehicle. Jurado Dep., 12/5/19, at 141, 165, 168; Lowry Dep., 12/5/19, at 55-56.

As a result, Erie filed a Complaint asserting only one cause of action against Appellee: promissory estoppel. Complaint, 11/9/18. In the Complaint, Appellant averred that it had relied on Appellee's promise that it would secure, wrap, and preserve the BMW and, but for Appellee's promise, Appellant "would have done so at its own expense and/or filed a legal action to require [Appellee] to do so." *Id.* at ¶ 24. Appellant further noted that as a result of Appellee's failure to preserve the BMW as promised, Appellant "is unable to pursue a claim against the manufacturer of the vehicle, the owner of the vehicle or anyone else" to recoup its losses. *Id*. at ¶ 25. Appellant asserted that "[i]njustice can only be avoided by enforcing the promise and holding [Appellee] responsible for the damages sustained by [Appellant's] insureds." *Id.* at ¶ 26. Of most significance to this appeal, Appellant pleaded that its losses, or damages that it suffered, were approximately $1,600,000. *Id*. at 5 (unpaginated).

During discovery, both Appellant's and Appellee's representatives and specialists provided deposition testimony regarding, *inter alia*, the standard course for preserving evidence in fire cases. Appellee's fire analyst confirmed that she and the other fire investigators at the joint inspection understood

that the BMW would be preserved for future inspection.[1] IAA's owner testified that he would not have preserved the property without a specific document from Appellee as the owner of the BMW. Appellee admitted that it did not provide the necessary documentation to IAA to preserve the vehicle.[2]

On May 5, 2021, Appellant filed a Motion for Summary Judgment. Appellee subsequently filed a Cross-Motion for Summary Judgment. On November 12, 2021, after converting Appellant's cause of action from one based on promissory estoppel to one of negligent spoliation of evidence and relying on **Pyeritz v. Commonwealth**, 32 A.3d 687 (Pa. 2011), the trial court granted Appellee's Cross-Motion for Summary Judgment and ordered the Prothonotary of Erie County to "enter judgment in favor of [Appellee] and against [Appellant] thereby concluding this litigation; no award to [Appellee] for damages or counsel fees." Order, 11/12/21.

Appellant timely appealed, and this Court affirmed the trial court's grant of Appellee's Cross-Motion for Summary Judgment, with one judge authoring a dissent. This Court granted Appellant's Motion for Reargument and withdrew the prior Opinions. The parties filed new briefs and presented oral argument to the Court sitting *en banc*.

**B.**

---

[1] Breneman Dep., 12/3/20, at 87, 90-93, 97, 102, 113, 146.

[2] Jurado Dep. at 165.

In this appeal, Appellant asserts that the trial court erred in, *inter alia*: (1) treating its promissory estoppel claim as one for negligent spoliation; and (2) granting summary judgment based on **Pyeritz**'s holding that Pennsylvania does not recognize negligent spoliation causes of action.[3]  Appellant's Brief at 3.  We review these claims under the following precepts.

We reverse an order granting summary judgment only where the trial court committed an error of law or abused its discretion.  **Pappas v. Asbel**, 768 A.2d 1089, 1095 (Pa. 2001).  Our scope of review is plenary.  **Id.**  In addition, "[w]e view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party."  **Id.**  A court will enter summary judgment "[o]nly where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law[.]"  **Id.**

Our Supreme Court has explained that "the doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his own position to his own detriment."  **Crouse v. Cyclops Indus.**, 745 A.2d 606, 610 (Pa. 2000) (citing Restatement (Second) of

---

[3] Appellant has also challenged the trial court's conclusion, in *dicta*, that no genuine issues of material fact existed with respect to Appellant's promissory estoppel claim.  Appellant's Brief at 3-4.

Contracts § 90)). A successful cause of action for promissory estoppel requires that the plaintiff plead and prove that: "(1) the promisor made a promise that he should have reasonably expected to induce an action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can only be avoided by enforcing the promise." *Id.*

**C.**

It is undisputed that Appellant's Complaint only contains one claim, which Appellant titled "Promissory Estoppel." Complaint, 11/9/18. Our review of the claim indicates that the underlying facts set forth in the Complaint provide for the possible recovery of damages based upon promissory estoppel. In particular, as set forth above, Appellant averred that it had relied on Appellee's promise that it would secure, wrap, and preserve the BMW and, but for Appellee's promise, Appellant "would have done so at its own expense and/or filed a legal action to require [Appellee] to do so." *Id.* at ¶ 24. Appellant further noted that as a result of Appellee's failure to preserve the BMW as promised, Appellant "is unable to pursue a claim against the manufacturer of the vehicle, the owner of the vehicle or anyone else" to recoup its losses. *Id*. at ¶ 25. Appellant asserted that "[i]njustice can only be avoided by enforcing the promise and holding [Appellee] responsible for the damages sustained by [Appellant's] insureds." *Id.* at 26. Since these allegations outline a theory of recovery in promissory estoppel, the trial court erred in

characterizing Appellant's properly pleaded promissory estoppel claim as a negligent spoliation claim. ***See Lobolito, Inc. v. North Pocono School District***, 755 A.2d 1287, 1292 (Pa. 2000) (where the language used in the complaint was sufficient to make out a promissory estoppel claim for purposes of surviving preliminary objections).

In light of this error, the trial court also erred by relying on ***Pyeritz***, in which our Supreme Court held that "Pennsylvania law does not recognize a cause of action for negligent spoliation of evidence[,]"[4] to dismiss Appellant's Complaint.[5]

In sum, by ignoring the claim that Appellant actually pleaded in the Complaint, and instead converting Appellant's claim to one that Appellant did not plead and then dismissing that claim on the basis of ***Pyeritz***, the trial court erred.

## D.

In conclusion, the trial court erred in converting Appellant's promissory estoppel claim to one of negligent spoliation and dismissing the Complaint on the grounds that Pennsylvania does not recognize a cause of action for

---

[4] ***Pyeritz***, 32 A.3d at 689.

[5] In ***Pyeritz***, the estate of Mr. Pyeritz brought suit against the Pennsylvania State Police ("PSP") alleging that the PSP negligently failed to preserve evidence the estate needed to pursue an action for negligence against the manufacturers of a hunting belt that broke, causing Mr. Pyeritz to fall from a tree. The estate did not assert a claim of promissory estoppel.

negligent spoliation of evidence. Accordingly, we reverse the trial court's order granting Appellee's Cross-Motion for Summary Judgment.[6]

Order reversed.

President Judge Panella, and Judges Nichols, Murray, Mclaughlin, King and McCaffery join this opinion.

Judge Olson files a dissenting opinion in which Judge Kunselman joins.

_____

[6] To the extent that the trial court considered, in the alternative, Appellant's promissory estoppel claim, and opined, in *dicta*, that it would fail because: (1) Appellant's damages are speculative; and (2) given the missing evidence, *i.e.*, the BMW vehicle, "the fact of harm and causation [are] uncertain[,]" Trial Ct. Op., 11/12/21, at 15, we likewise conclude the court erred in entering summary judgment in Appellee's favor.

First, as noted above, damages are not an element of promissory estoppel. **Crouse**, 745 A.2d at 610. Moreover, even if damages were an element of such a claim, we disagree with the trial court's finding that Appellant's damages are speculative. Appellant alleged that paid its insureds $1,600,000, a sum certain; this is, therefore, the amount of its damages. Finally, with respect to the trial court's conclusion that Appellant could not establish that Appellee's actions or failure to act caused its harm, we observe that the question of causation is a factual and not a legal one, and, thus, not an appropriate basis upon which to enter summary judgment. **See McGovern v. Spear**, 344 A.2d 826, 828 (Pa. 1975) (concluding that the court erred in granting summary judgment where "[t]he pleadings and depositions disclose that genuine issues of fact concerning appellants' alleged damages remain[] in dispute.").

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/21/2023